**UNITED STATES of America,**
**Libelant,**

v.

**3,827 COINS, being likenesses of the 1847 "Hapa Haneri" issued by the Hawaiian Government, Respondent.**

Civ. No. 1474.

United States District Court
D. Hawaii.

Oct. 3, 1956.

Louis B. Blissard, U. S. Atty., by Charles R. Wichman, Asst. U. S. Atty., Honolulu, Hawaii, for plaintiff.

Louis A. Rodrigues and Patrick F. Tuohy, Honolulu, Hawaii, for respondent.

WIIG, District Judge.

The United States of America as libelant filed a libel of information under the provisions of 18 U.S.C.A. § 492 against 3,827 coins "being likenesses of the 1847 'Hapa Haneri' issued by the Hawaiian Government," the possession of which it was alleged violated 18 U.S.C.A. § 489.[1] The libel prayed for forfeiture of the coins and their disposition pursuant to law.

In February 1956, a special agent of the United States Secret Service Field Force seized the respondent coins, claiming them forfeited in violation of the sections cited above. The coins were in the possession of Barney A. Gertz, who was responsible for their manufacture and who intended to sell them as souvenirs. The court accepted a stipulation that Gertz had no intention to defraud

1. Section 489 reads:
    "Whoever, within the United States, makes or brings therein from any foreign country, or possesses with intent to sell, give away, or in any other manner uses the same, except under authority of the Secretary of the Treasury or other proper officer of the United States, any token, disk, or device in the likeness or similitude as to design, color, or the inscription thereon of any of the coins of the United States or of any foreign country issued as money, either under the authority of the United States or under the authority of any foreign government shall be fined not more than $100."

or cheat any prospective purchasers, although that is not an issue in the case.

Respondent coins resemble very closely the "Hapa Haneri" copper penny issued by the Kingdom of Hawaii in 1847. They were, in fact, so intended and so ordered, with certain slight variations, which are: a different metal is used in the respondent coins, and they are slightly thinner than the genuine coins; the facings on the respondent coins are reversed from the "Hapa Haneri," i. e., when turning the coins over, the reverse side of the respondent coins will appear upside down; and on the respondent coins, in print so minute as to remain unseen without careful examination, are the words, "Souvenir Alii of Hawaii." The evidence is convincing that the respondent coins are likenesses or similitudes of the 1847 "Hapa Haneri."

The evidence showed that the "Hapa Haneri" coin was issued as money by the Kingdom of Hawaii in 1847. The 2nd Act of Kamehameha III, entitled "An Act to Organize the Executive Departments of the Hawaiian Islands," enacted April 27, 1846, authorized the issuance of coins such as the "Hapa Haneri." The coins were minted the following year and placed in circulation as genuine money of the Kingdom.

Counsel for the respondent coins urged that the coins are not within the proscription of Section 489 because the Kingdom of Hawaii is not now a foreign government or country within the meaning of the statute, or to put it another way, that Section 489 may only be construed to apply to an "existing" foreign country or government. The Assistant United States Attorney contends on behalf of libelant that the statute is broad in its

terms and that any coin "issued as money * * * under the authority of any foreign government" necessarily includes the respondent coins.

■ The court takes judicial notice of the following historical facts:

On October 8, 1840, the first Constitution of the Kingdom of Hawaii was proclaimed by King Kamehameha III. Following the lead of the United States of America, France and Great Britain in November 1843 united in a joint declaration recognizing the independence of the Kingdom of Hawaii. Her status as a sovereign nation continued until the annexation of the Republic of Hawaii to the United States of America by virtue of a Joint Resolution adopted on July 8, 1898. In April 1900, Congress enacted the Hawaiian Organic Act, 48 U.S.C.A. § 491 et seq., which established a territorial form of government in Hawaii, a status which has remained unchanged since that date.

■ An early case, United States v. Arjona, 1887, 120 U.S. 479, 7 S.Ct. 628, 30 L.Ed. 728, points up the need for and validity of laws of the United States which protect the integrity of money, notes or other securities issued by or under the authority of foreign sovereign governments. The rationale of that case, coupled with the definition of "foreign government" found in 18 U.S.C.A. § 11,[2] lead to the conclusion that respondent coins were not issued as money under the authority of a foreign government contrary to the provisions of Section 489.

Because of the chain of historical events summarized above, the Kingdom of Hawaii cannot possibly be considered as a "foreign government" in the year 1956. It no longer exists. After a long courtship,[3] the engagement was announc-

2. Section 11 reads:
   "The term 'foreign government', as used in this title, includes any government, faction, or body of insurgents within a country with which the United States is at peace, irrespective of recognition by the United States."

3. Page 7, Revised Laws of Hawaii 1935, Act 86, Session Laws of Hawaii 1923, approved April 26, 1923, part of Section 2:.

"The annexation of Hawaii was first formally considered between the governments of Hawaii and of the United States in 1853-4.

"At that time President Pierce of the United States instructed Secretary of State Marcy to commission D. L. Gregg to represent the United States in Hawaii, to negotiate with Kamehameha III, King

ed in 1898, followed by the wedding in 1900, which forever ended the existence of a proud and noble sovereign nation whose place in the nations of the world had been completely recognized by all other foreign governments up to the date of the final ceremony.

The libel of information is dismissed, and the respondent coins will be returned to their owner.

of Hawaii, for the annexation of Hawaii to the United States.

"The treaty was negotiated upon the basis of Hawaii coming into the Union as a State, 'enjoying the same degree of sovereignty as other States, and admitted as such . . . to all the rights, privileges and immunities of a state, on a perfect equality with other states of the union.'

"(See records of the United States State Department and Downes v. Bidwell, 182 U.S. 244 at [page] 305 [,21 S.Ct. 770, at page 794, 45 L.Ed. 1088].)"