**UNITED STATES of America,**
**Appellant,**

v.

**Barney A. GERTZ, Owner of 3,827 Coins being Likenesses of the 1847 "Hapa Haneri" Issued by the Hawaiian Government, Appellee.**

**No. 15485.**

United States Court of Appeals
Ninth Circuit.

Nov. 25, 1957.

Louis B. Blissard, U. S. Atty., Charles R. Wichman, Asst. U. S. Atty., Honolulu, Hawaii, for appellant.

Joseph Haber, Jr., Pierce Coombes, San Francisco, Cal., for appellee.

Before BONE, LEMMON, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

In this action, the United States seeks forfeiture of 3,827 coins which it has seized from the owner, Barney A. Gertz. It is alleged in the government's libel of information that these coins are likenesses of the hapa haneri coin of the former Kingdom of Hawaii. Their unauthorized possession by Gertz, the government contends, is unlawful under 18 U.S.C.A. § 489, and the coins are subject to forfeiture under 18 U.S.C.A. § 492.

The district court held, after trial, that possession of the coins by Gertz was not unlawful, because 18 U.S.C.A. § 489 applies only to likenesses of the coins of currently-existing countries and governments. United States v. 3,827 Coins, D. C.D.Hawaii, 144 F.Supp. 740. Judgment was therefore entered dismissing the libel of information and ordering return of the coins to Gertz. The United States appeals.

Hawaii had status as a sovereign nation from October 8, 1840, when King Kamehameha III proclaimed the first constitution, until the annexation of the Republic of Hawaii to the United States on July 8, 1898. The Hawaiian Organic Act, 48 U.S.C.A. § 491 et seq., enacted in April, 1900, established a territorial form of government in Hawaii, which continues to this day.

The hapa haneri coins were minted by the Kingdom of Hawaii in 1847, and were then placed in circulation as genuine money of the Kingdom. These coins, which had a face value of one cent, have not been in general circulation since 1900.

It is therefore established that the seized coins, if assumed to be likenesses of the hapa haneri, are not likenesses of the coins of a currently-existing country or government. The question for determination here is whether this circumstance precludes application of 18 U.S.C.A. § 489.

This statute reads as follows:

"Whoever, within the United States, makes or brings therein from any foreign country, or possesses with intent to sell, give away, or in any other manner uses the same, except under authority of the Secretary of the Treasury or other proper officer of the United States, any token, disk, or device in the likeness or similitude as to design, color, or the inscription thereon of any of the coins of the United States or of any foreign country issued as money, either under the authority of the United States or under the authority of any foreign government shall be fined not more than $100."

■ If this section is to be given the construction contended for by appellant, it would make unlawful the unauthorized possession of replicas of the stater of ancient Carthage, the denarius of ancient Rome, and the shekel of the ancient Kingdom of Judea. This is a result so startling that such a construction ought not.

to be accepted unless compelled by statutory language or legislative history. Appellant concedes that there is no helpful legislative history.

Turning first to the language of § 489, appellant points out that the section contains no language expressly limiting the terms "foreign country" or "foreign government" to currently-existing countries or governments, and that, on the other hand, each such term is preceded by the adjective "any."

The lack of express limiting language in this section does not appeal to us as a good indication that countries and governments no longer in existence are within the scope of the section. One ordinarily thinks of a foreign country or a foreign government as a presently-existing territory, nation, or institution. Without qualifying language or special context, one would not ordinarily comprehend the term to include countries and governments long since extinct. It therefore seems to us that what is significant here is not the omission of language limiting those terms to currently-existing institutions, but the omission of language expanding those terms to include countries and governments which have passed into history.

■ Nor, in our opinion, does the presence of the adjective "any" provide the clear indication of an expanded meaning which appellant's reading of the section requires. The adjective "any" does not necessarily serve to enlarge the noun it modifies to include objects no longer in existence. For example, the use of the term "any continent" would not, except under some special context, make clear that the so-called lost continent of Atlantis was included in the reference. "Any" animal usually means any live animal, and "any" building would not ordinarily be taken to include buildings

which had been torn down or destroyed by fire.

Section 489 has some context, on the other hand, which quite definitely supports the construction adopted by the trial court. The term "foreign country" appears twice in this section. It is first used in this context: "Whoever, within the United States, makes or brings therein from any foreign country * * * ." Since the verb "brings" is in the present tense, it must be that the term "foreign country," used in this context, means a currently-existing country. One cannot, in 1957, bring a coin from a country which passed out of existence more than half a century ago.

■■ If the term "foreign country," as first used in § 489, means a currently-existing country, it is probably intended to have a like meaning when again used at a later point in the same section. It is a familiar rule of statutory construction that, where the same word or phrase is used in different parts of a statute, it will be presumed, in the absence of anything clearly indicating a contrary intent, that the word or phrase is used in the same sense throughout. Under circumstances giving application to this rule, there is a corollary that, where the meaning of the word or phrase in one instance is clear, this meaning will be attached to it elsewhere. Schooler v. United State, 8 Cir., 231 F.2d 560, 563.

■ Applying that rule and corollary here, it would follow that § 489 forbids only the unauthorized possession of coins of the United States or of any currently-existing foreign country.

The parties have devoted much attention to the definition of "foreign government," set out in 18 U.S.C.A. § 11.[1] This definition, which is concededly applicable to § 489, reads as follows:

---

1. If the immediately preceding analysis is correct, it is immaterial whether or not the term "foreign government" includes governments no longer in existence, for it is still necessary for coins to be those of a currently-existing "foreign country." This is especially true if "for-

eign government" and "foreign country" are not synonymous, as appellant contends. While appellee contends that the terms are synonymous, the use of the two terms in 18 U.S.C.A. § 11, next quoted in this opinion, tends to support the view that they are not synonymous.

"The term 'foreign government', as used in this title, includes any government, faction, or body of insurgents within a country with which the United States is at peace, irrespective of recognition by the United States."

Appellee argues that the quoted section defines a foreign government as that of "a country with which the United States *is* at peace * * * ," (emphasis supplied) and contends that the United States could only be at peace with an existing country.

Appellant points out, however, that this statutory definition is preceded by the words, "the term 'foreign government', as used in this title, *includes* * * * ". (Emphasis supplied.)

■ The word "includes" is usually a term of enlargement, and not of limitation. As stated in Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 100, 62 S.Ct. 1, 4, 86 L.Ed. 65, " 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."[2]

The likelihood that "includes" is used in this sense in § 11 is fortified by the fact that in one of the definitions set out in chapter 1 of title 18 (§ 9) U.S.C.A., "means" is used instead of "includes," and in another such section (§ 6) both "means" and "includes" are used. It would therefore appear that in chapter 1, "means" is used when the term and its definition are to be interchangeable equivalents, and "includes" is used when it is desired to eliminate any doubt as to the inclusion in a larger class of the particular class specifically mentioned.[3]

■ It is reasonable to conclude from this that § 11 is not intended to limit the term "foreign government" to that of a country "with which the United States is at peace," but, as appellant argues, is broad enough to also embrace the government of a country with which the United States is at war.[4] But it is not readily apparent how this conclusion destroys the force of appellee's argument based on this definition. If "foreign government" includes not only that of a country "with which the United States is at peace," but also that of a country with which the United States is at war, the inference still remains that it is only presently-existing countries to which reference is being made. The United States could no more be at war than at peace with a nonexistent country.[5]

Adoption of appellant's construction of 18 U.S.C.A. § 489 as applying to countries and governments no longer in existence would present a grave constitutional question. In United States v. Arjona, 120 U.S. 479, 7 S.Ct. 628, 30 L.Ed. 728, the power of Congress to enact statutes *making it unlawful to forge or counterfeit the securities "of any foreign*

2. See, also, Gray v. Powell, 314 U.S. 402, 416, 62 S.Ct. 326, 86 L.Ed. 301; Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 188–189, 61 S.Ct. 845, 85 L.Ed. 1271; American Surety Co. of New York v. Marotta, 287 U.S. 513, 517, 53 S.Ct. 260, 77 L.Ed. 466.

3. That this is not necessarily true in every statute where the two words are used, see Blankenship v. Western Union Tel. Co., 4 Cir., 161 F.2d 168. See, also, Helvering v. Morgan's, Inc., 293 U.S. 121, 125, 55 S.Ct. 60, 79 L.Ed. 232.

4. An additional reason for reaching this conclusion is that the definition contained in § 11 is, with minor changes in phraseology, derived from § 4 of Title VIII of the act of June 15, 1917 (chapter 30, 40 Stat. 217, 226), known as the Espionage Act of 1917. (See historical note after 18 U.S.C.A. § 11.) The Espionage Act of 1917 (see § 2(a) of 40 Stat. 217, 218), as well as its present-day counterpart (see 18 U.S.C.A. § 794), expressly applies in time of war as well as in time of peace.

5. It may be added that, if the term "foreign government" had been intended to include not only that of a country with which the United States is at peace or war, but also a nonexistent government of a nonexistent country, it is probable that Congress would have taken as much pains to say so as it did to say, in § 11, that the term includes the government of a country with which the United States is at peace, "irrespective of recognition by the United States."

government" was challenged. The Supreme Court held that Congress had such power under Art. I, § 8, clause 3, conferring power "to regulate Commerce with foreign Nations * * *," and Art. I, § 8, clause 10, conferring power "to define and punish * * * Offenses against the Law of Nations." The rationale of that decision is that, in thus protecting the securities of other nations with which the United States maintains intercourse, it is serving its own best interests.

No such rationale, of course, can be applied with regard to countries and governments no longer in existence. Making or possessing replicas of the hapa haneri of the former Kingdom of Hawaii does not pertain to commerce "with" foreign nations, and violates no law of nations.

██ It is a principle of constitutional adjudication that, where there is a choice of fair alternatives, that construction of a statute should be accepted which will avoid serious doubts as to its constitutionality. United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770.[6] The construction of § 489 contended for by appellant is not required by the express language used. The canon of statutory interpretation to which reference has just been made thus argues strongly for acceptance of that construction which will avoid the constitutional problem which has been suggested.

Appellant argues that, if Congress had intended to limit the application of § 489 to governments and countries currently in existence, it could have used express language to that effect. In support of this view, our attention is called to certain other statutes dealing with likenesses of foreign coins, in which, it is said, such a limitation of this kind is set out in express language.[7]

These other statutes, are, in so far as they relate to foreign coins, expressly limited to coins in current use as money. In comparison, § 489 relates to likenesses of the coins of any foreign country "issued as money." It may be persuasively argued from this that it was not the intention to limit § 489 to coins in current use as money, but that it applies to coins of a foreign country which were issued as money, whether or not they are now in current use as money.

We see no reason, however, for drawing from these differences in statutory language the further inference that § 489 was intended to apply to coins issued as money by a foreign country or government, whether or not such country or government is now in existence. On the other hand, if the comparison between these sections is thought to have a tendency in the direction of such an inference, it is our opinion that it is more than offset by the other considerations, noted above, which point to an opposite conclusion.[8]

---

6. Conversely, a restrictive interpretation should not be given a statute merely because giving effect to the express language employed by Congress might require a court to face a constitutional question. United States v. Sullivan, 332 U.S. 689, 693, 68 S.Ct. 331, 92 L.Ed. 297.

7. The application of 18 U.S.C.A. § 331, relating to the mutilation, diminution, and falsification of coins, is limited, in so far as foreign coins are concerned, to "any foreign coins which are by law made current or are in actual use or circulation as money within the United States." Substantially the same language is used with regard to foreign coins affected by 18 U.S.C.A. § 485, relating to falsely made, forged, or counterfeited coins. A section (18 U.S.C.A. § 486) dealing with the

unauthorized uttering or passing of coins, is expressly limited to coins "intended for use as current money, whether in the resemblance of coins of the United States or of foreign countries * * *."

8. We also find unconvincing appellant's further argument based upon the relatively greater severity of penalties imposed with respect to violations of 18 U.S.C.A. §§ 331, 485, and 486, as compared to § 489. The difference in severity of penalties, which is very marked, is due, in our opinion, to the fact that offenses under §§ 331, 485, and 486, unlike § 489, concern fraudulent use of replicas of coins in current use as money. This was regarded as a direct menace to the integrity of the monetary system. Section 489, on the other hand, was patently de-

**668**

In its reply brief, the government, citing 48 U.S.C.A. §§ 513, 514, advances the argument that the coins of the former Kingdom of Hawaii are still legal tender and redeemable in American currency. It is argued from this that Congress must have intended that these coins should be protected from counterfeiting.

In 48 U.S.C.A. § 513, it is provided that "silver coins that were coined under the laws of Hawaii," when the same are not mutilated or abraded, shall be received at the par of their face value in payment of all dues to the government of the Territory of Hawaii and of the United States. This statute further provides that coins so received shall not again be put into circulation, but they shall be recoined in the mints as United States coins. In 48 U.S.C.A. § 514, it is provided that any collector of customs or of internal revenue of the United States in the Hawaiian Islands shall, "if he is so directed by the Secretary of the Treasury," exchange standard silver coins of the United States that are in his custody with the government of Hawaii, or with any person desiring to make such exchange, for coins of the government of Hawaii.

Any person who would make a coin in the likeness or similitude of a coin of the former Kingdom of Hawaii, for the purpose of paying government dues or obtaining, in exchange, coins of the United States, would intend such coins "for use as current money," within the meaning of 18 U.S.C.A. § 486. The making of replicas of such coins with this fraudulent intent is therefore forbidden under the latter statute, and needs no protection from 18 U.S.C.A. § 489.

The innocent use of such replicas to pay government dues, or in exchange for coins of the United States, is not forbidden by 18 U.S.C.A. § 486, or any other statute (unless it is 18 U.S.C.A. § 489). However, the likelihood of such an impo-

sition seems quite remote, in view of the fact that the payments and exchanges must be made through government officials. In any event, if there is an unguarded danger in this situation, a legislative and not a judicial problem is presented.

In our opinion, 18 U.S.C.A. § 489 applies only to likenesses of the coins of currently-existing countries and governments. It follows that Gertz did not violate that statute in possessing likenesses of the hapa haneri of the former Kingdom of Hawaii, and that the coins in question are not subject to forfeiture under 18 U.S.C.A. § 492.

Affirmed.

---

signed to cover unauthorized use of likenesses of coins (whether in current use or not) without fraudulent intent but under circumstances which might unintentionally deceive. The difference in penalty is not reasonably explainable, in our opinion, on the theory that § 489 was intended to cover unauthorized use of likenesses of coins of nonexistent countries and governments.