DE LA SALLE INSTITUTE, a membership corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 7499.

United States District Court
N. D. California, N. D.

July 24, 1961.

892

Valentine Brookes, Paul E. Anderson, John W. Broad and John A. Busterud, San Francisco, Cal., for plaintiff.

Laurence E. Dayton, U. S. Atty., San Francisco, Cal., Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., and Jerome Fink, Trial Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

HALBERT, District Judge.

Plaintiff has commenced this action to compel refunds of sums paid by it on account of certain corporate income taxes which plaintiff has allegedly paid in error, together with the interest provided by law. These taxes were for plaintiff's fiscal years ended March 31, 1952, March 31, 1953 and March 31, 1956. Jurisdiction of this Court is predicated upon Title 28 U.S.C. §§ 1331, 1340 and 1346. De-

fendant filed a counterclaim in this action, for certain alleged deficiencies for the years at issue, in accordance with the provisions of Title 26 U.S.C. § 7422(e). The Court ordered the issues of the counterclaim to be tried separately after the resolution of the issue presented by the complaint [as twice amended] and the answer (Federal Rules of Civil Procedure, Rule 42(b), 28 U.S.C.).

Succinctly stated, the issue presented by the complaint and answer is this: Does plaintiff fall within the exemption granted a church or a convention or association of churches (Title 26 U.S.C. § 511 (a)(2)(A))?

This issue has been tried before the Court, sitting without a jury. Each side has extensively briefed its position, and the issue is now submitted to the Court for its decision.

Plaintiff is a membership, nonprofit corporation organized under the laws of the State of California, characterized by its by-laws (adopted in 1940) as "an educational and benevolent institution." The members of plaintiff are all members of the San Francisco Province of the Institute of the Brothers of the Christian Schools, a Religious Institute of Pontifical Right of the Roman Catholic Apostolic Church. This Institute is commonly known as the Christian Brothers Order.

Plaintiff, during the fiscal years in issue, owned and operated (in addition to some miscellaneous property) the following:

(1) A novitiate at which postulants and novices of the Christian Brothers Order were trained to play their part in the Order;

(2) Certain Catholic schools, at or below high school age level;

(3) Homes for the Brothers, including a home for retired Brothers; and

(4) A winery and distillery.

The winery and distillery were transferred to a corporation sole during the second fiscal year in issue, and leased back to plaintiff. The corporation sole involved was the legal entity which had been established under California law to represent the head of the San Francisco Province of the Christian Brothers Order.

During the fiscal years involved, plaintiff had a very substantial income from the operation of a large commercial wine and brandy production business. It is said that Christian Brothers is the largest selling domestic brandy in the United States. It is undisputed that this business was principally an "unrelated business" and that plaintiff had an "unrelated business net income" during the fiscal years in question, within the meaning of those terms as employed in the 1939 Internal Revenue Code, § 421, 26 U.S.C.A. § 421, and in the 1954 Internal Revenue Code, § 511 (Title 26 U.S.C. § 511). The taxes in dispute were computed on the basis of such unrelated business net income, the 1939 Code applying to the first two fiscal years in suit, and the 1954 Code applying to the third. These taxes, plus interest, amount to $489,-800.83.

Plaintiff filed timely claims for refund of the sums in question, on the grounds that plaintiff is a church and an integral part of a church, and thus exempt from the taxes in question (See Title 26 U.S.C. § 511(a) (2) (A); and 1939 Internal Revenue Code, § 421(b) (1) (A)). These claims were not allowed. It is admitted that plaintiff has exhausted its administrative remedies, except that defendant contends that plaintiff has never properly presented its claims for administrative action, insofar as they are based upon the missionary activities carried out in the Philippines by the San Francisco Province of the Christian Brothers Order.

Admissibility of Evidence.

Plaintiff has offered a great deal of evidence to which defendant has objected. The Court has reserved ruling upon the admissibility of this evidence. In the meantime, defendant has been allowed to cross-examine, amplify, explain or rebut this evidence without prejudice to its

general objection that the evidence is irrelevant and therefore not admissible.

The evidence objected to by defendant on the ground of irrelevance for the most part falls into two categories:

(1) Evidence relating to the canon law of the Roman Catholic Apostolic Church, together with the rules of the Christian Brothers Order, and the interpretation of this law and these rules by which the San Francisco Province of the Christian Brothers Order abides.

(2) Evidence of those activities of the San Francisco Province of the Christian Brothers Order which are not carried out through the instrumentality of plaintiff.

Where the canon law and other rules under which plaintiff's members operate are in conflict with the civil law, they are not binding here. Plaintiff does not contend that they are. Notwithstanding this rule, it is patent that an understanding of these laws and rules will be helpful in deciding what activities plaintiff is engaged in; whether plaintiff fulfills church functions; and whether plaintiff is an integral part of a church.

■ It is important to know what rules the Christian Brothers live by in this province. *Their* interpretation of the rules is what is at issue, and it is not necessary for this Court to decide [for example] whether they have or have not correctly interpreted the document which they consider to be permission from Rome to operate a winery. [They also believe that they live according to the directions of the Bible, but it is not necessary for this Court to decide here whether or not they actually do.] For the reasons noted, all of the evidence in the first category is admissible. Defendant's objection thereto will therefore be overruled.

■ The activities of the San Francisco Province of the Christian Brothers Order which are not carried out by plaintiff may throw light on the purposes of the activities which are carried out by plaintiff. The evidence of such activities is certainly not prejudicial, and should be admitted if it throws any light at all on the issues of this case. Such evidence is particularly relevant when considered in terms of the third fiscal year involved in this suit and in the light of 26 CFR § 1.511–2(3) (I.R.C.1954). All evidence in the second category is admissible. Defendant's objection to this evidence will be overruled.

■ Plaintiff's exhibit 5 for identification is an extract from an unpublished ruling that since Loyola University is owned and controlled by the Society of Jesus, it need not pay tax on its unrelated business net income. This ruling is an interpretation by the Internal Revenue Service of 26 CFR § 1.511–2 (I.R.C.1954). The ruling does throw some light on the issues of this case. Defendant was duly warned that the exhibit in question would be regarded as accurate unless defendant produced better evidence of the contents of the ruling (See pp. 14–15 of the trial transcript; and See the Memorandum and Order filed on this point by the Court on October 17, 1960). Defendant does not in fact challenge the accuracy of the extract, but only its relevance. While the ruling of the Service is considered relevant, it is not necessarily controlling here. Plaintiff's exhibits 3 and 4 for identification, which deal with the same subject, and plaintiff's exhibit 5 for identification will be received in evidence.

■ Defendant has objected to much evidence on the ground that it is hearsay. Exceptions to the hearsay rule have virtually swallowed the rule. When it is impracticable to put before the Court direct evidence on intricate points which have relevance, and there exists a publication covering those points, such a publication is admissible hearsay if a witness can be produced to vouch for the general authenticity of such publication. This situation is analogous to that presented by the business records exception to the hearsay rule.

■ Defendant has failed to show that any of the exhibits or testimony now at issue should be excluded. It may be

noted that defendant's objections to the introduction of such evidence were mostly of a vague, general character [a situation which the Court, at the time of the objections, invited in order to speed up the trial]. Moreover, defendant has failed adequately to support by argument its position against the introduction of such evidence [this being a situation the Court did *not* invite]. In fairness to defendant, its failure to make more precise objections at the time of the trial should not be held against it. Accordingly, this facet of the matter will be overlooked. The Court cannot, however, overlook the failure of defendant properly to brief its objections. This failure is fairly interpreted by plaintiff as an abandonment of those objections. This is, therefore, an independent reason why all the testimony and exhibits to which defendant objected should be, and will be, received in evidence.

Summary of Facts Found by the Court.

The Christian Brothers Order was founded by St. Jean Baptiste de la Salle in 1680. It was established as an Institute of Pontifical Right by a Bull issued by Pope Benedict XIII in 1725. The purpose of the Christian Brothers Order is to furnish a religious education for children and youth. The local operations, with which we are primarily concerned, are carried out by the San Francisco Province of the Order, headed by the Brother Visitor or Brother Provincial.

The members of the Order take vows of poverty, chastity, obedience, stability in the Order, and a vow to teach the poor gratuitously. They are required to wear a prescribed religious habit at all times. No member of the Order, except its founder, has ever been a priest. The members live a regimented, cloistered, communal life, characterized by frequent prayer, an ascetic ideal, and an avoidance of unnecessary contact with secular persons. By Roman Catholic Canon law, the Faithful are divided into the categories of clerics, Religious and secular persons. The members of the Christian Brothers Order are categorized as Religious.

The Brothers perform the mission of the Christian Brothers Order by teaching the youth in Catholic schools. They teach ordinary courses in such things as arithmetic, grammar, languages, geography and the like. They also teach religion. Save and except in schools of the college level,[1] there is a daily course in religion in the schools which plaintiff owns, and in those other schools in which the Brothers teach in the San Francisco Province. The courses in religion are mandatory for all students.

Each classroom in plaintiff's schools, and those similar schools in the San Francisco Province, in which the Brothers teach, contains various religious objects. These include a holy water font, a crucifix, figures or pictures of the saints, and other items of a similar character. The school day is interspersed with frequent prayers. On certain days of particular religious significance to Roman Catholics the Brothers lead their students to the chapels, which are located at the schools, and there they lead the students in prayers, including the Rosary, or sometimes prepare them for those services which are given only by priests. Whenever an opportunity presents itself in the course of teaching a secular subject, the Brothers try to inculcate the precepts of their religion in their students. The secular education is not, however, neglected. It is adequate to satisfy the compulsory education requirements of the State of California. The fact is that most of the school day is devoted to secular courses.

The property of the Christian Brothers Order, including the property of plaintiff, is considered to be Church property according to the Roman Catholic Canon law. It may not be alienated, except in the normal course of business, for which

1. St. Mary's University is operated by a corporation under the control of the San Francisco Province (a separate corporation from plaintiff). Here the course in religion is given three times each week.

blanket permission has been given, without permission from the hierarchy of the said Church, under pain of sin.

The Roman Catholic Church considers the teaching of religion to be one of the great functions of the Church. The other principal function of the Church is to administer the sacraments. The Church considers that the Brothers are performing a church function, namely, teaching religion. The Brothers are also engaged in missionary work. The San Francisco Province of the Christian Brothers Order administers the work of the Order in the missionary territory of the Philippines. The work there is essentially the same as the work of the Order in California. The Christian Brothers are considered to be professional churchmen by plaintiff's witnesses. By administrative interpretation, the Brothers are considered to be ministers of religion for the purposes of the Selective Service laws of the United States. Since the Brothers are not priests, they do not perform the functions which are peculiar to the *sacerdos* [or priest], which are the distinctly "sacerdotal" functions of the Roman Catholic Church.

The Bishops of the Roman Catholic Church are required by its Canon law to establish religious schools. The same law requires Catholic parents to send their children to such schools whenever possible.[2] The Canon law further enjoins Catholic parents against sending their children to non-Catholic, neutral or mixed schools.[3]

The Internal Revenue Service has issued an unpublished ruling to the effect that Loyola University of New Orleans, a Jesuit University, is exempt from the tax on unrelated business net income under the exemption of "a church, a convention or association of churches." This ruling is based upon the fact that the Jesuits perform sacerdotal functions— that is, that the Jesuits have priests in their Order. The evidence shows that Jesuit Priests (even though engaged in educational work) are extremely active in the duties of the priesthood.

Plaintiff's original corporate function was to operate the novitiate which the San Francisco Province of the Christian Brothers Order maintains. After 1937, plaintiff engaged in the manufacture and sale of wine and wine products commercially. The actual operation of this business is carried out by a few of the Brothers, and by laymen [principally by laymen].

In 1951, after the passage of the Supplement U tax on unrelated business net income, the policy leaders of the Christian Brothers Order arranged the transfer to plaintiff of the ownership of two Catholic Schools. This was done after consultation with counsel, principally for tax avoidance purposes. Brother Alfred claimed that the principal motive for this action was so that there would be a more regular way for the application of the winery income to the schools. I am not impressed by this statement, for two reasons. First, plaintiff's income was already at the disposal of the Brother Visitor, and could be applied to the schools in any fashion that he wished, without any need for a corporate rear-

2. The Bishop must decide whether circumstances in his diocese are such that other schools may be tolerated, and, if so, with what precautions they may be tolerated. This he must do with the danger of loss of faith in mind.

3. A neutral school is one which takes no religious position. A mixed school is a non-Catholic school which admits children of any or no religion. A Catholic school may admit a small number of non-Catholic children. If a State-run school admits non-Catholic children, it is a prohibited "mixed" school, even though it may permit religious instruction on the premises. It is further objectionable to the Church, because the Church does not want religious teaching confined to religion courses, but feels that religious teaching should pervade all subjects. Plaintiff's witness, Father Connolly, testified as follows:

"* * * teaching of religion is not something to be confined to the teaching of the religion courses. There are so many ways in which moral teaching and even dogmatic teaching come to play a part in the appreciation and understanding of other subjects."

rangement. Second, the schools were, for all practical purposes, self-supporting from tuition, etc. Plaintiff did no more than advance some of the winery money to pay their taxes. The reasons given by Brother Alfred were more in the nature of excuses than reasons. Under the circumstances, I can conclude but one thing, and that is that the principal motive was tax avoidance.

The reasons for the transfer and lease back of the winery and distillery do not seem relevant to the question now at issue. Such being the case, I will not here try to resolve them.

During the second taxable year in issue, plaintiff began the construction of a Catholic school in Reedley, California. It was placed in operation in September, 1953. In the course of the third taxable year, plaintiff contracted to acquire, complete and operate a Catholic school then under construction in Pasadena, California. In all of plaintiff's schools (except the novitiate), there are some secular teachers.

There are two chapels at the novitiate which plaintiff owns, and there is a chapel at each of the schools. These chapels are churches where most of the incidents of worship at any Catholic church take place (except the sacrament of marriage, which is denied to the Christian Brothers by their vows). However, the chapels are adjuncts of the novitiate and the schools. They primarily serve the Brothers and the boarding students. Plaintiff hires priests to officiate at the ceremonies held in these chapels. These priests are of course not members of the Christian Brothers Order. These chapels at the schools are small, but two of them can be expanded by opening sliding doors leading to a cafeteria and a classroom.

Part of plaintiff's income was paid to the Brother Visitor as rent under the lease of the winery and distillery, during the second and third taxable years in suit. Part of the income was paid to the Brother Visitor as compensation for the Christian Brothers who gave their time to plaintiff. Some money was donated to the Brother Visitor by plaintiff. Certain of plaintiff's funds were accumulated as a reserve.

The Brother Visitor used the money which he had on hand to further the purposes of the Christian Brothers Order. He made a purported loan of approximately $800,000, interest-free, to Saint Mary's University, which is a separate corporation of the Christian Brothers. He supported the Brothers, taking care of their material and spiritual well-being. He used some of the money to help support the missionary operations of the Christian Brothers Order in the Philippines. The work there consisted of the operation of Catholic schools in those islands.

Statutes, Legislative History, and Regulations.

The first two taxable years at issue are governed by the 1939 Internal Revenue Code, and the last year is governed by the 1954 Code. The language to be interpreted is the same in each Code.

■ Plaintiff, being organized and operated for religious, charitable and educational purposes, is exempt from the general tax on corporate income.[4] A tax was imposed upon the unrelated business net income of such exempt corporations, except for the income of "a church, a convention or association of churches" (1939 Internal Revenue Code, § 421; 1954

---

4. Among the exempt corporations are the following:

"Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals * * *." 1939 Internal Revenue Code, § 101(6), 26 U.S. C.A. § 101(6); and

"Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals * * *." 1954 Internal Revenue Code, § 501(c) (3), 26 U.S.C.A. § 501(c) (3).

Internal Revenue Code, § 511 (Title 26 U.S.C. § 511)).

A "feeder" corporation, which is engaged in the carrying on of a business or trade for profit, and which pays its profits over to an exempt corporation [even to a church], is also subject to tax (1939 Internal Revenue Code, § 421(b) (1) (A); 1954 Internal Revenue Code, § 502 (Title 26 U.S.C. § 502)).

Plaintiff had unrelated business net income which would justify the imposition of at least the amount of tax paid by plaintiff, unless plaintiff's income is the income of "a church, a convention or association of churches." The question is whether the statutory language includes plaintiff's income. The language is sufficiently ambiguous to justify a careful consideration of the legislative history (Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349; and Korte v. United States, 9 Cir., 260 F.2d 633).

The unrelated business net income tax is imposed solely upon the income of religious, charitable, and educational corporations, exclusive of churches, or conventions or associations of churches. Every church or convention or association of churches is obviously a religious organization. But is the converse true—is every religious organization a church? Congress would in all probability not have drawn a new word into the statute unless it meant thereby to express a different idea (See United States v. Gertz, 9 Cir., 249 F.2d 662). There would be no sound reason to use the term "church" in the statute, unless there was an intention to express a more limited idea than is conveyed by "religious organization."

The genesis of the tax in question was the Revenue Act of 1950. Exemption from the tax was granted to "churches" by the original bill as presented to the House of Representatives. The effect of this exemption was discussed in H.Rep't 2319 (81st Cong., 2d Sess.), the report by the House Ways and Means Committee on H.R. 8920 (which became the Revenue Act of 1950), as follows:

"The tax does not apply to * * * a church. However, the tax does apply to other exempt institutions under the auspices of the churches." H.Rep't 2319, p. 36.

" * * * the following organizations * * * are subject to the tax * * * religious organizations, (other than churches) * * * While churches are exempt from the Supplement U tax, religious organizations are subject to such tax even though organized under church auspices. This is also true of organizations with charitable, educational, etc., purposes which are organized under church auspices." H.Rep't 2319, p. 108.

The quoted language demonstrates the restricted meaning which the word "church" was intended to have. It is obvious that an organization with an educational or even a religious purpose, formed under church auspices, was not necessarily a "church" under the language of the bill.

During the debate on this bill upon the floor of the House of Representatives, a colloquy took place regarding the applicability of the tax to plaintiff (96 Cong. Rec. 9367).

Representative Lynch of New York was the floor manager for the bill. Representative Johnson of California stated that:

"I would like to ask this question about semi-private schools: Christian Brothers, a Catholic Order, has a winery * * * do they come under this exemption, or are they exempt?"

Mr. Lynch replied:

"This bill does not apply to churches. It does apply to charitable and educational institutions organized under church auspices that engage in unrelated business activities. I do not know whether the Christian Brothers, to whom the gentleman re-

fers, maintain a college in that area or not."

Being told that Christian Brothers do operate a college, Mr. Lynch "assumed" that they would be taxable. Such doubt as there was seems to have grown out of the question of whether the income would be from an "unrelated" business.[5] Finally, Mr. Lynch said that not every case could be explicitly covered in the statute, but that many questions must be considered as a matter of administration.

When the bill reached the Senate Finance Committee, a spokesman for the Southern Baptist Convention expressed fear that the bill, as originally drafted, would tax the Baptist Convention, as being a convention of churches rather than a church. He proposed an amendment to exempt

"* * * autonomous individual churches alone or cooperating together by means of a convention or other form of cooperative religious organization controlled by or principally supported by such independent churches or their members, together with such subsidiary agencies as they may use and control to carry out their religious, charitable, benevolent, and education objectives."

The Spokesman for the Baptists wanted to have the Baptist orphanages, hospitals, schools, colleges, universities, etc. exempted from the tax. The Senate Committee rejected his proposed language, and it rejected his proposed change in the legislative objective. The Committee expanded the exemption of "churches" to include "conventions or associations of churches." [This is the final form of the bill.] Instead of exempting religious organizations controlled or supported by churches or their members, and subsidiary agencies used for religious, etc., ob-

jectives, the Committee said (S.Rep't 2375 (81st Cong., 2d Sess.) p. 106):

"While churches and associations or conventions of churches, such as the Southern Baptist Convention, are exempt from the Supplement U tax, religious organizations are subject to such tax even though organized under church auspices. This is also true of organizations with charitable, educational, etc., purposes which are organized under church auspices."

At p. 27 of S.Rep't 2375, supra, it is said that the tax is imposed in the same manner and applies to the same organizations as under the House Bill, except that "it is *made clear* that associations or conventions of churches are also excluded from the tax." [Emphasis added.] My interpretation is that the Senate amendment was merely for purposes of clarification, and made no substantive change. The word "church" was originally used in a broad enough sense to cover conventions or associations of churches. The amendment did not broaden the language enough to cover subsidiary religious organizations.

The Summary of the bill, prepared by the staff of the Joint Senate-House Committee on Internal Revenue, said that the tax applies to exempt organizations [other than a church or association or convention of churches] operating under church auspices.

After passage of the Revenue Act of 1950, Treasury Regulations governing the first two fiscal years at issue were duly promulgated, in the following language (26 C.F.R. (IRC 1939) § 39.421–2 (a) (3)):

"Churches and associations or conventions of churches are exempt from the Supplement U tax. The exemption is applicable only to an or-

---

5. Mr. Johnson further stated that the Christian Brothers "had a farm in Napa County, a school to train the brothers." Mr. Lynch said, "If * * * there was a school there for the purpose of training the Christian Brothers and they engaged in this outside work of wine pro-

duction, having no relation to the school, it seems to me under those circumstances they would rightly be taxed."
Any doubt appears to have arisen over the question of whether the business was "unrelated."

ganization which itself is a church or an association or convention of churches. Religious organizations, including religious orders, if not themselves churches or associations or conventions of churches, and all other organizations which are organized or operated under church auspices, are subject to the Supplement U tax, whether or not they carry out a religious, educational, or charitable function approved by a church. For example, an incorporated university exempt from tax under section 101(6) is subject to the Supplement U tax whether or not it was organized by or is operated under the auspices of a church."

The provisions of the tax were re-enacted without change in the organizations exempted in the Internal Revenue Code of 1954, § 511. The Committee reports, insofar as they dealt with § 511, said that no substantial change had been made in the law.[6]

A separate provision of the Code (§ 170) provided, in its original form, for additional deductions for (a) churches, conventions or associations of churches, or religious orders, (b) certain educational organizations, and (c) certain hospitals. The Senate Finance Committee, at the request of a Roman Catholic spokesman, struck out the words "or a religious order," on the theory that the word "church" should be all-inclusive, and that to include "religious orders" specifically in § 170 might lead to confusion in the interpretation of other provisions of the bill, and the House accepted the change without comment.[7]

The pertinent Regulations under the 1954 Code are as follows (26 C.F.R. (IRC1954) § 1.511–2(a) (3)):

"(i) Churches and associations or conventions of churches are exempt from the tax imposed by section 511. The exemption is applicable only to an organization which itself is a church or an association or convention of churches. Subject to the provisions of subdivision (ii) of this subparagraph, religious organizations, including religious orders, if not themselves churches or associations or conventions of churches, and all other organizations which are organized or operated under church auspices, are subject to the tax imposed by section 511, whether or not they engage in religious, educational, or charitable activities approved by a church.

"(ii) The term 'church' includes a religious order or a religious organization if such order or organization (a) is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise. In determining whether a religious order or organization is an integral part of a church, consideration will be given to the degree to which it is connected with, and controlled by, such church. A religious order or organization shall be considered to be engaged in carrying out the functions of a church if its duties include the ministration of sacerdotal functions and the conduct of religious worship. If * * * not an integral part of a church, or if * * * not authorized to carry out the functions of a church * * * it is subject to the tax imposed by section 511, whether or not it engages in religious, educational, or charitable activities approved by a church. What constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of a particular reli-

---

6. U.S.Code Cong.Admin.News (83d Cong., 2d Sess., 1954) p. 4309, p. 4951.

7. The Committee understood "that 'church' to some denominations includes religious orders as well as other organizations which, as integral parts of the church, are engaged in carrying out the functions of the church whether as civil law corporations or otherwise." (See: U.S.Code Cong.Admin.News (83d Cong., 2d Sess., 1954) at pp. 4660–4661, 4843 and 5289).

gious body constituting a church. If a religious order or organization can fully meet the requirements stated in this subdivision, exemption * * * will apply to all its activities, including those which it conducts through a separate corporation (other than a corporation described in section 501(C) (2)) or other separate entity which it wholly owns and which is not operated for the primary purpose of carrying on a trade or business for profit. Such exemption from tax will also apply to activities conducted through a separate corporation * * wholly owned by more than one religious order * * *"

Clearly, the Senate Report on § 170 strongly influenced these regulations.

### Resolution of the Issues.

The question to be answered in this phase of the instant case is whether plaintiff's income is the income of a church or association or convention of churches.

The purpose of forming a corporation is to establish a separate legal entity (See Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499). Under the laws of the State of California and of the United States, plaintiff, being separately incorporated, is separate and distinct from the Christian Brothers Order and from the Roman Catholic Church as a whole. For example, plaintiff's creditors can have no recourse against the property of the Roman Catholic Church in general. Assuming that the Canon law of the Roman Catholic Church considers plaintiff's income to be that of the Christian Brothers Order, or of the Church, that fact can avail plaintiff nothing in this case. Plaintiff enjoys the advantages of separate incorporation under the civil law, and it must bear the disadvantages (Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399; Moline Properties v. Commissioner, supra; and National Carbide Corp. v. Commission-

er, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779).

Plaintiff obviously is not a convention or association of churches, nor is the Christian Brothers Order a convention or association of churches. Plaintiff is an integral organization, as is the Christian Brothers Order. The Roman Catholic Church is a "church." Consequently, if plaintiff's income would not have been exempt under the original wording of the statute, exempting "churches," it was not made exempt by the Senate amendment, adding "conventions or associations of churches." In fact, I regard the Senate amendment as merely clarifying language, and making no substantial change whatever.

The chapels at plaintiff's parochial schools and novitiate are "churches." A corporation which did no more than operate one or more of these would obviously be a "church" within the meaning of the statutes being interpreted. But plaintiff does much more than this. The operation of the chapels is incidental to plaintiff's principal activities, although very important to plaintiff's members. The tail cannot be permitted to wag the dog. The incidental activities of plaintiff cannot make plaintiff a church.

Plaintiff's winery may have a chapel for the use of the workers there. Nevertheless, the winery is a winery, not a church. If plaintiff ran the winery only, with an attached and subsidiary chapel, plaintiff would not be a "church" within the meaning of the statutes here involved.

If a giant money-making corporation, such as General Motors, owned a company town, complete with churches, which the company owned and operated, the company would not be a "church." If, in its defense operations, the United States owns a town (as it does at Herlong, California) complete with churches, that does not make the United States a church.

The parochial schools operated by plaintiff are not churches. The chapels at the schools are mere adjuncts of such schools. The religious activities [including dogmatic teaching, moral teaching, etc.] which take place at the schools are not sufficient to work a change of kind, turning the schools into churches. Anyone talking about the schools [plaintiff's witnesses, for example] would refer to them as "schools" rather than as "churches."

One can conceive of a winery, in which religiously habited monks would be among the workers. These monks might pray frequently, retire to an attached chapel for prayers and meditation according to a regular schedule, seek to convert or enlighten their fellow-workers at every opportunity, and endeavor to think religious thoughts and live by their religious creed at all times. The winery would nonetheless be a winery, and this would be true regardless of the conduct of certain of its employees. By the same token, a school, which has teachers similar to the monks in our hypothetical winery, remains a school.

The principal activities in the schools operated by plaintiff are scholastic. Even when one considers the religious activities, it should be remembered that they are not necessarily "church" activities. The legislative history of the statutes under consideration constantly draws the distinction between "churches" and "religious organizations under church auspices." Not all religious activities tend to make an organization a "church."

■■■ Mr. Lynch's statement to Mr. Johnson on the floor of the House of Representatives is revealing. Mr. Lynch clearly implied that Saint Mary's University, run by Christian Brothers [which, as we have seen, has a chapel and required religion courses], is not a "church."[8] The regulations under § 421 of the 1939 Internal Revenue Code state that an incorporated university organized under the auspices of a church (or a convention, etc.) is not exempt. These regulations are reasonable and consistent with the language of the statute and with the legislative history, and should therefore be upheld (C. I. R. v. South Texas Lumber Co., 333 U.S. 496, 68 S.Ct. 695, 92 L.Ed. 831).

Common sense, besides the legislative history and the regulations, makes it apparent that a university is not a church, even though it may have a chapel and a required religion course three hours a week. What then is the difference between such a university and a parochial school with a chapel and five hours a week required religion course?[9] It is a difference of degree, not sufficiently great to rise to a difference of kind. A school such as plaintiff maintains and operates is not a church, any more than a university is a church.

■■■ Plaintiff relies on the recent decision of Swart v. South Burlington Town School District, 122 Vt. 177, 167 A.2d 514. This decision, rendered by the Supreme Court of the State of Vermont, is entitled to the respectful consideration of this Court as persuasive authority, but is of course not binding upon this Court. Denial of certiorari by the United States Supreme Court (366 U.S. 925) imports no expression of opinion on the merits of

8. The colloquy on the House floor applies to the legislation as enacted. The Senate amendment made no substantial change, and certainly did not include plaintiff for the first time. There is no convention or association of churches involved in this case.

9. Plaintiff points out that the tax was imposed as a result of the abuse of the exemptions of certain universities. The

Congress, exercising its foresight, imposed the tax upon all exempt corporations except churches, etc. The remedy was broader than the most celebrated of those abuses which called it forth. Obviously, the tax would apply to secular elementary schools, as well as secular universities. I conclude that it would apply to religious elementary schools, as well as to religious universities.

the case (United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361).

The conclusion reached in the Swart decision was that diocesan parochial schools and a parochial school owned and operated by a Catholic religious institute are integral parts of the Catholic Church. I am not persuaded by the logic of this decision. The circumstances of that case are different, moreover, from the circumstances of the instant case. The legislative history of the statutes here under consideration imports a restrictive interpretation of the word "church." Swart to the contrary notwithstanding, I remain convinced that plaintiff's schools are not "churches" for the purposes of this case.

■ The tenets of the Catholic Church are cited as holding that religious teaching, including religious teaching of the usual secular courses required by the compulsory education laws of the State of California, is a "church" function. The tenets of the Church cannot broaden the statutory exemption. What is a "church" for purposes of the statute must be interpreted in the light of the common understanding of the word. An organization established to carry out "church" functions, under the general understanding of the term, is a "church." Where a church held as a fundamental part of its creed that the duty of a church was to teach Christian principles by example, by operating businesses in everyday life, the United States Court of Appeals for the Ninth Circuit held that this creed could not be controlling for tax exemption purposes (Riker v. Commissioner, 9 Cir., 244 F.2d 220). The church involved in that case held [on the basis of an apparently sincere conviction and a logical argument] that operating a restaurant was a church function. The Court did not deny the church the right to engage in the restaurant business, but did hold that that business was not an exempt church function.

■ Plaintiff contends that the First Amendment to the Federal Constitution prevents the exemption from being accorded only to those organizations which meet the "orthodox" conception of what is a church. Plaintiff, it must be remembered, is seeking the benefit of an exemption from tax accorded by Congress to churches, or conventions or associations of churches. To exempt churches, one must know what a church is. Congress must either define "church" or leave the definition to the common meaning and usage of the word; otherwise, Congress would be unable to exempt churches. It would be impractical to accord an exemption to every corporation which asserted itself to be a church. Obviously Congress did not intend to do this. If the Constitutional argument has any merit, it should cause the exemption to be struck down as a whole—not cause it to be extended to those who are not within its terms.

The Federal Government may not, as plaintiff points out, compel the people to engage in only certain church functions. Indeed, the Government may not compel the people to engage in *any* church functions. If there were any Constitutional problem in this case, it would be the problem of whether any exemption of churches from the unrelated business tax could be justified. Since defendant does not seek to raise such a question, the Court prefers to pass the subject without further consideration. Plaintiff's Constitutional arguments would apply to the restaurant in the Riker case, and with a change in Catholic Church doctrine they would turn plaintiff's winery into a church. The argument might be made that the Church needs money to do its work; that the devoted monk who works in a commercial winery is essential to that work and is therefore engaged in church work. If the doctrine of the Catholic Church were such, work in the winery might be a church function according to the precepts of the Church. This, however, could not

transform an incorporated winery into an exempt church, under any reasonable interpretation of the statute.

The novitiate which plaintiff owns and operates is not a church. It is essentially a school to train the Brothers to be teachers of California youth in Catholic schools. Although a corporation which ran the novitiate alone well might be a religious organization, it still would not be a church. The chapel, of course, is a church, but it is a mere adjunct of the novitiate. This construction of the law conforms to the views expressed by Mr. Lynch on the House floor. It is further supported by the authority of Whealon v. United States, Cust.Ct., 191 F.Supp. 945. In that case, it was held that a seminary for the professional religious education of priests [with an attached chapel] was not a "house of worship," although it was held that the term "house of worship" comprehended not only "churches" but other places which could not be called "churches." If a seminary for the professional education of priests is not a "church," as it is not, then clearly a novitiate for the education of religious educators such as the Brothers is not a "church" even though it may have a church or chapel as an adjunct.

■■■ Neither plaintiff's parochial schools nor plaintiff's novitiate are churches. They are plaintiff's principal activities, except for its commercial wine and brandy making business. It follows then that plaintiff is not a "church."

■■■ The next question to be considered is whether plaintiff's income can be exempted on the ground that the Christian Brothers Order is a "church," as defined in 26 C.F.R. (IRC 1954) § 1.-511–2(a) (3). The Christian Brothers Order is [in common parlance] a religious order, and an integral part of a church. Its duties [whether in missionary territory or in territory such as California] are primarily concerned with education. Furnishing a student with an education [even if it is a religious education] is not a sacerdotal function, nor does it constitute the conduct of religious worship. Thus plaintiff cannot be exempted under the explicit terms of the regulation in question.[10]

■■■ Plaintiff, while contending that its income comes within the terms of the regulation, also contends that the regulation is unduly restrictive, and to that extent invalid. It is clear that to the extent that the regulation is out of harmony with the statutes, it is not binding upon the Courts (Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; Granquist v. Hackleman, 9 Cir., 264 F. 2d 9; Northern Natural Gas Company v. O'Malley, 8 Cir., 277 F.2d 128). A regulation may neither restrict nor enlarge the scope of a statute. A regulation is valid only as far as it is a proper construction of a statute (Miller v. United States, 294 U.S. 435, 55 S.Ct. 440, 79 L.Ed. 977; Northern Natural Gas Company v. O'Malley, supra; Ware Knitters, Inc. v. United States, Ct.Cl., 168 F.Supp. 208). A regulation out of harmony with the statute is a mere nullity (Manhattan General Equipment Co. v. Commissioner, supra; Boykin v. Commissioner, 8 Cir., 260 F.2d 249). The taxpayer may not, any more than the Government, prevail upon the basis of a void regulation (Manhattan General Equipment Co. v. Commissioner, supra).

The regulation makes exempt separate corporations or entities owned by a religious order which it defines as included in the term "church" where such

10. Plaintiff contends that, since the Order assumes complete responsibility for all the needs of the Brothers, including their spiritual needs, to that extent it has sacerdotal duties and the duty of conducting religious worship. This contention interprets the regulation over-literally [and in such a way as to make it invalid], making a strictly incidental function of the Order determine its character as a "church." An order of wine-making monks, which took care of its members' needs, would fit into this interpretation.

entities are not primarily engaged in business carried on for profit. This is in clear violation of the legislative purpose to tax religious, educational or charitable organizations organized under church auspices, which are not themselves "churches." To that extent, then, the regulation is a nullity. With the invalid language excised, the regulation clearly can be of no assistance to plaintiff. The crucial invalid portion is as follows (26 C.F.R. (IRC 1954) § 1.511-2(a) (3) (ii)):

> " * * * If a religious order or organization can fully meet the requirements stated in this subdivision, exemption from the tax imposed by section 511 will apply to all its activities, including those which it conducts through a separate corporation other than a corporation described in section 501(c) (2) or other separate entity which it wholly owns and which is not operated for the primary purpose of carrying on a trade or business for profit."

The unpublished decision relating to Loyola University is patently based upon the cited invalid language. It cannot control this Court, and is not, in fact, persuasive.

There are two good reasons why the language of the Senate Finance Committee report, in discussing § 170 of the 1954 Code, cannot broaden the exemption of § 511 of that Code so as to apply to plaintiff's income.

First, a reasonable interpretation of the language of that report would limit the words "religious orders" by applying to them the modifying clause "which, as integral parts of the church, are engaged in carrying out the functions of the church whether as civil law corporations or otherwise." Giving the term "church" and therefore the term "functions of the church" a reasonable interpretation, it becomes obvious that the Christian Brothers Order cannot qualify under this language. The functions of the Christian Brothers Order are educational and religious. These functions are not "church" functions in the sense intended in the statutory language.

Second, there are various kinds of legislative history—some legislative history gives a good indication of legislative intent, and some does not. That cited in the instant case by plaintiff does not. Committee reports made well after the enactment of legislation cannot determine the meaning of that legislation (Fogarty v. United States, 340 U.S. 8, 71 S.Ct. 5, 95 L.Ed. 10; Budd Co. v. United States, D.C., 148 F.Supp. 792, affirmed 3 Cir., 252 F.2d 456; United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884; Penn Mutual Life Ins. Co. v. Lederer, 252 U.S. 523, 40 S.Ct. 397, 64 L. Ed. 698). The Committee report here under consideration can control, if at all, only as to the third of the three fiscal years involved in the instant case.

The Senate Finance Committee was considering § 170 of the 1954 Code, the original House version of which granted an additional deduction for contributions to (a) churches, conventions or associations of churches, or religious orders; (b) educational organizations; and (c) hospitals. The Roman Catholic Church, the only politically important body which could profit from the express recognition of religious orders, asked that such language be stricken out, and it was. Nobody expressly referred to § 511, supra, which we are construing, either in the Senate hearing or in the language of the Senate report referring to this change in the House bill. It is well within the realm of possibility that the Senate Finance Committee members had no real idea of the exact purpose of the Catholic spokesman in proposing the change. No clarifying language was inserted in the report referring to § 511 specifically. Assuming, *arguendo*, that the Senate Finance Committee knew what it was doing and intended the result contended for by plaintiff [This would appear to be very unlikely in the light of all of the existing cir-

cumstances.], the result was not expressed with enough clarity to make the object apparent to the other members of the Senate or to the members of the House.

A member of the Senate who was interested in seeing what was done to the "church" exemption of § 511 would naturally read the portion of the report pertaining to the section and in so doing he would note that "no substantial change" was made in the part in which he was thus interested. That he would read further seems highly unlikely. That he would apply the language dealing with § 170 [even if he noticed that language] to § 511 seems even more unlikely. Assuming, however, that he did, what could he have been expected to do, if he wished to avoid the construction contended for by plaintiff? If he attempted to reinsert the words "or a religious order" in § 170, he well might have increased the tax exemption advantages of the Church when his goal was to diminish them.[11] If he had sought to amend § 511, so as to make clear that it did not include religious orders generally as "churches," he then would have had to propose carefully worded language from the floor of the Senate. The amendment must have been so worded, or so surrounded with unimpeachable legislative history, as to show that the amendment was merely clarifying. Otherwise, plaintiff's attorney would have grounds to contend that the amendment was necessary to the purpose of applying the tax to plaintiff, and thus could strengthen plaintiff's case relative to the first two fiscal years in suit.

Our mythical Senator is placed, by plaintiff's proposed application of the legislative history, in the Alice-in-Wonderland situation of having to run as hard as he can merely to stay in the same place. Rational rules of legislative construction, bearing some relation to the realities of the legislative process, would not place him in that position (See Mastro Plastics Corp. v. N. L. R. B., 350 U.S. 270, 288, 76 S.Ct. 349, 100 L.Ed. 309; and St. Mary's Sewer Pipe Co. v. Director, 3 Cir., 262 F.2d 378).

The legislative history of § 421 of the 1939 Code, plus the distinction between the language of § 101(6) of that Code and the language of § 421, supra, shows that the meaning of "church" was intended to be restrictive, and not to reach religious organizations which are not churches, even if formed under church auspices. The Committee Reports directly referring to § 511 of the 1954 Code stated that there was no substantial change in the exemption. Such clearly expressed legislative intent overrides the ambiguous effect on § 511, supra, of the Senate Finance Committee Report dealing with § 170 of the 1954 Code.

The Court concludes that plaintiff cannot prevail upon the issues of the complaint. Plaintiff's income was not that of a "church, a convention or association of churches" and was therefore not exempt.

It is, therefore, ordered that plaintiff take nothing by the complaint in this action, and that judgment be entered in this action, on the issues of the complaint, in favor of the defendant and against the plaintiff;[12]

---

11. Not only would such an amendment benefit some few religious orders under § 170, but plaintiff would be sure to interpret it, if at all possible, as merely clarifying language. Thus, unless the floor debates were unambiguous, it might appear that the amendment merely showed that religious orders were intended to be included in the word "church" all along. Although such a contention is perhaps invalid, it can be made to appear rather plausible.

12. If both parties are satisfied with the ruling here made, we can, on appropriate motion, proceed with the trial of the issues raised by the pleadings relating to defendant's counterclaim.

If either one or both of the parties are dissatisfied with the ruling here made, I would be willing to authorize an immediate appeal. I am of the view that the order here made is one that comes within the provisions of Title 28 U.S.C. § 1292(b). I am of the opinion that such

And it is further ordered that defendant prepare any and all documents necessary to carry this Memorandum and Order into effect, and lodge them with the Clerk of this Court pursuant to the applicable rules and statutes.

order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of this litigation.