**AMERICAN GUIDANCE FOUNDATION, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 79–2061.**

United States District Court, District of Columbia.

May 22, 1980.

Lee T. Ellis, Jr., Washington, D. C., for plaintiff.

Patricia A. Scott, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

GESELL, District Judge.

Plaintiff, American Guidance Foundation, Inc. ("AGF"), a non-stock non-profit corporation operating in Philadelphia, seeks to be declared a "church" for tax purposes. After four years of administrative controversy, the Internal Revenue Service ("IRS") rejected AGF's request, leaving it classified as a private foundation, see 26 U.S.C. § 509(a) (1976), but not as a church, see 26 U.S.C. § 170(b)(1)(A)(i) (1976). Having exhausted its administrative remedies, plaintiff is properly before the Court. 26 U.S.C. § 7428(a)(1)(B) (1976). Thorough briefs were submitted by the parties, and the Court also has reviewed a substantial administrative record.

AGF was organized under Pennsylvania law by Robert Seyfried in 1972. Originally chartered as an educational organization, it successfully sought IRS exemption under section 501(c)(3) of the Internal Revenue Code. In late 1974, plaintiff "became a church" by unanimous consent of its directors, who then included Mr. Seyfried, his wife, his mother, his sister and his brother-in-law.[1] Throughout its existence, AGF has consisted of Mr. Seyfried and at most five members of his immediate family. Since August, 1977, the only members have been Seyfried, his wife and their minor child. Mr. and Mrs. Seyfried are the sole directors and officers. Mr. Seyfried, who graduated from Philadelphia College of the Bible in the 1950's and teaches in the Philadelphia school system, is presently plaintiff's one commissioned "Christian Worker." He "regularly ministers to the AGF congregation," through worship services conducted in the Seyfrieds' apartment.

In its 1974 Articles of Amendment, AGF identified its purposes as follows:

> To be an independent church, as described by Section 170(b)(1)(A)(i) of the Internal Revenue Code of 1954, that, according to its insight, fosters verbally and/or non-verbally love of God everywhere with one's whole heart, soul, mind, and strength and love of one's neighbor as oneself (Mark 12:30, 31) according to the doctrines of the Holy Scriptures as found in the canonical books of the Old and New Testaments and as lawfully construed by its Board of Directors . . . .

AGF's code of doctrine and discipline is "contained in the Old and New Testaments." Record evidence as to the nature of plaintiff's tenets or creed is generalized and largely uninformative. Various AGF exhibits reveal an abiding interest in the quality of communications between people, their communication with God, and the nature of communication itself. Color television and videotape recordings are employed during worship services. The Christian Worker conducts conversational and silent prayer with AGF's congregation. AGF also

---

1. Different tax consequences flow from being classified a church, as opposed to a religious or educational organization that is a private foundation. Private foundations face more stringent limitations regarding inter alia permissible sources of income, required distributions of funds, and recordkeeping and reporting obligations. See generally 26 U.S.C. §§ 170; 507 509; 6033; 6056 (1976 & Supp. II 1978). Because this action seeks only relief in the form of a declaratory judgment, the Court cannot explore such differential consequences here.

advertises in the Philadelphia Yellow Pages and has a recorded religious message on telephone tape. Although AGF describes itself as an independent church whose membership is not associated with any other denomination, it shares its place of worship, its telephone, its members and directors, its minister, and its conduct of services with Family Church, an organization that has not sought tax-exempt status.

It is well to begin by stating what is *not* at issue. The IRS concedes that plaintiff is a religious organization, qualifying for exemption under sections 501(c)(3) and 509(a) of the Code. The benefits accruing from such a determination are not in jeopardy. Difficult issues involving what constitutes sincere religious belief or practice, and how to avoid enforcing religious orthodoxy through the tax laws need not be faced. The narrower question presented here is whether this religious organization qualifies as a "church," as that term has been construed by the Service and the courts.

Although it is settled that Congress intended a more limited concept for "church" than for the previously identified "religious organization," Congress has offered virtually no guidance as to precisely what is meant. *See De La Salle Institute v. United States*, 195 F.Supp. 891, 897–901 (N.D.Cal. 1961); *Chapman v. Commissioner of Internal Revenue*, 48 T.C. 358, 361–63 (1967). Nor does a coherent definition emerge from reviewing the Service's rulings or regulations, or the limited instances of judicial treatment. One court concluded after thorough review of the relevant statutes and regulations that what is a "church" must be determined in light of general or traditional understandings of the term. *De La Salle*

*Institute v. United States, supra*, 195 F.Supp. at 903. Such understandings are not easily achieved for at least two reasons. There is no bright line beyond which certain organized activities undertaken for religious purposes coalesce into a "church" structure. And the range of "church" structures extant in the United States is enormously diverse and confusing. *See generally* Whelan, *'Church' in the Internal Revenue Code: The Definitional Problems*, 45 Ford.L.Rev. 885 (1977).

■ Faced with the difficult task of determining whether or not religious organizations are in fact churches, the IRS has developed fourteen criteria which it applies on an ad hoc basis to individual organizations.[2] While some of these are relatively minor, others, *e. g.* the existence of an established congregation served by an organized ministry, the provision of regular religious services and religious education for the young, and the dissemination of a doctrinal code, are of central importance. The means by which an avowedly religious purpose is accomplished separates a "church" from other forms of religious enterprise. *See Chapman v. Commissioner of Internal Revenue, supra*, 48 T.C. at 367 (Tannenwald, J., concurring). At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. Unless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role.

■ Plaintiff fails to satisfy the standard. Mr. Seyfried and his wife pray to-

2. The criteria applied are as follows:
  (1) a distinct legal existence
  (2) a recognized creed and form of worship
  (3) a definite and distinct ecclesiastical government
  (4) a formal code of doctrine and discipline
  (5) a distinct religious history
  (6) a membership not associated with any other church or denomination
  (7) an organization of ordained ministers
  (8) ordained ministers selected after completing prescribed studies
  (9) a literature of its own
  (10) established places of worship
  (11) regular congregations
  (12) regular religious services
  (13) Sunday schools for religious instruction of the young
  (14) schools for the preparation of its ministers.
No single factor is controlling, although all fourteen may not be relevant to a given determination. *See* Speech of Jerome Kurtz, IRS Commissioner, at PLI Seventh Biennial Conference on Tax Planning, Jan. 9, 1978, *reprinted in* Fed. Taxes (P-H) ¶ 54,820 (1978).

gether in the physical solitude of their home. They do not constitute a "congregation" within the ordinary meaning of the word. AGF has made no real effort to convert others or to extend its membership beyond the immediate Seyfried family. Its telephonic religious message hardly qualifies as dissemination of a creed or doctrine. Its "religious instruction" consists of a father preaching to his son. Its "organized ministry" is a single self-appointed clergyman. Its "conduct of religious worship" does not extend beyond the family dwelling, which is used primarily for non-religious purposes. Rather than ministering to a society of believers, plaintiff is engaged in a quintessentially private religious enterprise.

The sincerity of the Seyfrieds' own religious beliefs is unquestioned here. Although the record is far from clear in establishing a recognizable creed or formal discipline, the Court does not rely on such uncertainties. The Court also need not address the matter of AGF's dubiously independent status in view of its intimate relation to the Family Church. Instead, AGF fails to qualify under the threshold indicia of communal activity necessary for a "church."

■ It is not enough that a corporation believes and declares itself to be a church. Nor is it sufficient that the applicant prepares superficially responsive documentation for each of the established IRS criteria. To hold otherwise would encourage sham representations to the IRS and result in adverse tax consequences to the public at large. In this instance, AGF does not employ recognized, accessible channels of instruction and worship. There is little if any evidence that it seeks to reach or serve a congregation. Private religious beliefs, practiced in the solitude of a family living room, cannot transform a man's home into a church.

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. The case is dismissed.

SO ORDERED.