*Decision will be entered under Rule 155.*

THE CHURCH OF ETERNAL LIFE AND LIBERTY, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 27487-82X.          Filed April 29, 1986.

Patrick A. Heller (a director), for the petitioner.
*Roberta M. Hamm*, for the respondent.

WILLIAMS, *Judge*:* The Commissioner determined that petitioner does not qualify for exemption from Federal income taxation under section 501(a)[1] as an organization described in section 501(c)(3) or as a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i). Petitioner seeks a declaratory judgment of this Court pursuant to section 7428 that it is an exempt organization described in section 501(c)(3) and a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i).[2]

## FINDINGS OF FACT

This case was submitted on the stipulated record pursuant to Rules 122 and 217(b).[3] The evidentiary facts and representations contained in the administrative record are assumed to be true. Rule 217(b)(1). Petitioner's registered office at the time the petition was filed was Oak Park, Michigan.

Petitioner, the Church of Eternal Life and Liberty, Inc. (CELL), was incorporated on October 1, 1976, in the State of Michigan. Its three incorporators were Patrick Heller (CELL's founder), his brother, James Heller, and Anna Bowling. Petitioner is independent of any other organization's control or supervision. Petitioner's articles of incorporation state that petitioner is organized exclusively for religious purposes within the meaning of section 501(c)(3). Its doctrine generally follows that of an organization known

---

*By order of the Chief Judge, this case was reassigned to Judge Williams for decision and opinion.

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue, unless otherwise indicated.

[2] The statutory prerequisites for declaratory judgment jurisdiction of this Court under sec. 7428 have been satisfied: (1) Petitioner is the organization the qualification or classification of which is at issue; (2) petitioner has exhausted its administrative remedies; and (3) petitioner's pleading was filed before the 91st day after the date respondent's final adverse determination letter was mailed to petitioner. See sec. 7428(b).

[3] All Rule references are to the Tax Court Rules of Practice and Procedure.

as "the First Libertarian Church." The record does not indicate whether the First Libertarian Church is an exempt organization under section 501(c)(3).

The bylaws of petitioner provide that it is to be managed by a board of at least three directors, who are not compensated and who need not be members of CELL. Ministers, however, must be members of CELL, and may be ordained only by the unanimous consent of CELL's ordained ministers. Since its inception CELL has had two ordained ministers—Patrick Heller and Thomas Selene.

To become a member of petitioner an applicant: (1) Must not be a member of any political party, unless so required by the State in which the applicant resides; (2) must sign an "oath of devotion";[4] (3) must demonstrate an understanding of CELL's principles and a willingness to promote these principles; and (4) must not voluntarily accept governmental welfare benefits, including Social Security, educational scholarships, medicare, and other forms of governmental assistance. An applicant is evaluated for at least 1 year by a minister, during which period he or she is classified as a "student." After evaluation, the minister submits a recommendation to petitioner's board of directors. The final decision on whether to accept or reject an applicant for membership is made by vote of the board.

Petitioner has only two members—Patrick Heller and Thomas Selene—though petitioner has evaluated approximately 3 to 5 "students" since its inception, one of whom was Anna Bowling. Some of these individuals have continued as "students" from year to year, while others have had their applications canceled. None has been approved by

---

[4]The oath of devotion is as follows:

I, as a member of The Church of Eternal Life & Liberty, Inc. affirm my understanding of, support for and desire to promote the following principles:

That freedom is self-control—no more, no less.

That the ideal of rational existence is to live and let live.

That the individual is the only being who knows the totality of his timeplace knowledge and value system, and therefore most capable of knowing what will maximize his happiness.

That, in order for an individual to avoid infringing upon the rights of others to life, liberty and property, use of force for aggression and retaliation should be avoided.

That each individual, through use of his mind, is capable of recognizing his rights and the rights of others.

That immortality is logically possible and that when an individual leads a longer, healthier life, his potential for happiness increases.

petitioner's board as a member of CELL. The same day that Anna Bowling's "student" status was terminated, her membership on petitioner's board of directors was terminated. Petitioner states that potential members and contributors will refrain from participation in the activities of CELL until its tax-exempt status is established.

Patrick Heller's residence has served as petitioner's principal place of business since petitioner's formation. Heller resided in apartments in Pontiac, Michigan, and Berkley, Michigan, until 1980. Petitioner paid all expenses associated with the rental and maintenance of these properties on behalf of Patrick Heller.

At its meeting in May of 1980, petitioner's board of directors—Patrick Heller, James Heller, and Anna Bowling—authorized Patrick Heller to purchase a house on behalf of petitioner in Oak Park, Michigan, for use as a CELL facility. On June 10, 1980, Patrick Heller purchased in his own name a house in Oak Park for $52,849.81. Patrick Heller used the top two floors of the house as his residence, while petitioner occupied the basement.

Petitioner liquidated certain of its assets to finance the downpayment on the Oak Park property. These assets consisted of coins originally donated to petitioner by Patrick Heller with a book value of $7,950.09, which were sold for $23,120.65. Petitioner paid all utility, mortgage, tax, and other expenses associated with the purchase and maintenance of the Oak Park house.

The exact amount of the living expenses paid each year by petitioner on behalf of Patrick Heller is unclear.[5] Petitioner states that for 1978, 1979, and 1980, the cash and depreciation expenditures of CELL for Heller's living expenses totaled $11,335.27, and asserts that Patrick Heller worked 980.75 hours in 1978, 819 hours in 1979, and 1243.75 hours in 1980 as petitioner's minister. In the only detailed cost statements provided by petitioner, however, the following expenses were recorded for the years 1979 and 1980, representing living expenses paid on behalf of Patrick Heller:

---

[5]Petitioner states that commencing in May of 1981, Heller maintained a single room in Lansing, Michigan, as his residence. The record does not state whether petitioner paid any of Heller's housing expenses in Lansing. However, petitioner's records reflect minister housing expenses for 1981 equivalent to those for 1979 and 1980.

|  | *1979* | *1980* |
|---|---|---|
| Minister housing | $3,813.19 | $3,812.68 |
| Rent | 1,108.34 | 791.66 |
| Taxes | 55.54 | 474.32 |
| Telephone | 49.25 | 265.54 |
| Totals | 5,026.32 | 5,344.20 |

These expenses represent 30 percent of petitioner's aggregate recorded expenses for 1980 and 45 percent of such expenses for 1979.[6]

Over 97 percent of petitioner's funding has been from contributions, which totaled $24,667.74 in 1980, and $6,116.35 in 1979. Patrick Heller alone contributed $17,101.81 in 1980, or 70 percent of petitioner's contributions received that year. Other contributions recorded by petitioner were received in 1980 from the following:

| Contributor | Amount (in $'s) | Percent of total contributions received |
|---|---|---|
| R. Brakeman | 2,857.35 | 11.6 |
| T. Selene (Member, Minister) | 927.75 | 3.8 |
| J. & J. Heller (Director) | 794.63 | 3.2 |
| A. Bowling (Director) | 442.90 | 1.8 |
| Parker, Wittus & Co. | 717.00 | 2.9 |
| M. Hoy | 335.25 | 1.4 |

The remaining 6 percent of contributions received that year were from a small number of individuals who each donated less than 1 percent of petitioner's contribution total. In 1979 petitioner received contributions of the following amounts:

| Contributor | Amount (in $'s) | Percent of total contributions received |
|---|---|---|
| P. Heller (Director, Member, Minister) | 2,394.59 | 39.1 |
| T. Selene (Member, Minister) | 1,411.00 | 23.1 |
| A. Bowling (Director) | 493.75 | 8.1 |
| J. Heller (Director) | 85.00 | 1.3 |
| M. Hoy | 902.65 | 14.8 |

---

[6]Other expenses recorded by petitioner include $757.95 for minister education, $779.68 for entertainment and travel, $243.01 for "defense" and $2,388.32 for depreciation, all in 1980. A minister's retirement fund is also provided for. The travel and entertainment expenditures are claimed to represent the cost of attending a seminar by Robert LeFevre in California in July, 1980.

| Contributor | Amount (in $'s) | Percent of total contributions received |
|---|---|---|
| City of Southfield | 149.00 | 2.4 |
| "Other small contributors" | 680.36 | 11.1 |
| Total | 6,116.35 | [1]100.0 |

[1]Rounding off causes the total to be inexact.

Petitioner's principal activities include the operation of a library containing about 4,000 items, bimonthly meetings, the distribution of literature, the sale of merchandise, and the publication of a newsletter. The library is open to the public 2 nights per month for 2.5 hours per night. Petitioner states that appointments may be made by members of the public to use the library. The record does not indicate whether any such appointments were in fact made. The topics of petitioner's bimonthly meetings are sometimes listed in petitioner's newsletter, and have included political and economic debates, readings of libertarian poetry, and discussion of philosophical subjects.

Petitioner's newsletter, published approximately 5 times per year, is distributed to roughly 150 recipients. It includes a calendar of events deemed of interest to its readers (usually notices of meetings of libertarian organizations, philosophical and political lectures, CELL meetings and related events), slogans, and short articles on issues of concern to or activities of CELL.[7]

Petitioner has for several years sold merchandise produced by Simon Jester and, in the spring of 1981, acquired the company. Simon Jester produces bumper stickers, buttons, and other items bearing libertarian slogans.[8] Petitioner's records indicate that sales of Simon Jester products generated revenues of between $300 and $400 per year, or roughly 1.5 percent of petitioner's annual revenues. The value of the assets of Simon Jester owned by petitioner is not made clear in the record.

Petitioner donated $200 in each of the years 1979 and 1980 to Hillsdale College for scholarship purposes, and has

[7]The newsletter included the following slogans and prayer: "Freedom — self-control — self-responsibility," "Freedom isn't free. Freedom isn't dumb," "May I be strong enough to survive while living my life as I think right. May I love long and freely while I live my life as I think right. The will is within me, I shall live my life right."

[8]These slogans include "No one's life, liberty and property are safe while a government exists to protect them," "Taxation is theft," "Censorship — an immoral act of coercive suppression usually done in the name of morality."

contributed funds to other organizations, including $400 to aid Southeast Asian refugees in Michigan, and $1,250 to the Cryonics Institute, of which Patrick Heller is a director and treasurer. In October of 1979, petitioner made a loan of $5,100 to Anna Bowling for the purchase of a car. This loan was charged to Patrick Heller personally who repaid it by the end of 1981. Petitioner has also distributed libertarian literature to various schools, universities, and libraries.

Petitioner has never filed a Form 1023, "Application for Recognition of Exemption." Pursuant to section 7605(c) of the Internal Revenue Code of 1954, respondent sent a written request for information to petitioner in April of 1981 to determine whether petitioner qualified for exemption from Federal income tax. On April 26, 1981, petitioner answered respondent's inquiries in a 44 page letter. Subsequent investigation led respondent on September 1, 1982, to mail petitioner a final adverse determination letter denying it exempt status under section 501(c)(3). Respondent concluded that:

> You are not organized or operated exclusively for religious or any exempt purpose described in section 501(c)(3) of the Code. You are operated in such a manner that part of your net earnings inures to the benefit of certain individuals. In addition, you are operated for private rather than public interests and many of your activities are for non-exempt purposes; for example the publication of a newsletter and the purchase of a company called Simon Jester. We have also determined that you are not a church. As we have determined that you are not a church, even if you were to be recognized as exempt under section 501(c)(3) you would not be exempt because you have not satisfied the provisions of section 508(a).

It is on this record that petitioner seeks a declaratory judgment pursuant to section 7428.

## OPINION

Section 508(a) requires an organization organized after October 9, 1969, to give notice to the Commissioner that it is applying for recognition of exempt status as an organization described in section 501(c)(3).[9] To satisfy this notice

---

[9]Sec. 508 provides in pertinent part:

SEC. 508. SPECIAL RULES WITH RESPECT TO SECTION 501(c)(3) ORGANIZATIONS.

(a) NEW ORGANIZATIONS MUST NOTIFY SECRETARY THAT THEY ARE APPLYING FOR RECOGNITION OF SECTION 501(C)(3) STATUS.—Except as provided in subsection (c), an organization organized

requirement, the organization must apply for recognition of its exempt status within 15 months after the end of the month of its formation. Sec. 1.508-1(a)(2), Income Tax Regs. If the organization fails to give proper notice within this 15-month limit, section 508 provides that the organization will not be treated as described in section 501(c)(3) for any period prior to the time it provides such notice. Sec. 508(a)(2); sec. 1.508-1(a)(ii), Income Tax Regs. Consequently, with some important exceptions provided by section 508(c), any organization failing to give proper notice cannot be treated as exempt from taxation under section 501(a) as an organization described in section 501(c)(3). See generally sec. 1.508-1(a)(3), Income Tax Regs.

The parties agree that petitioner has never filed a Form 1023, Application for Recognition of Exemption. Therefore, unless petitioner can establish that one of the exceptions provided by section 508(c) applies to it, petitioner does not qualify as an organization described in section 501(c)(3). Petitioner contends that it is a church, and thus, pursuant to section 508(c)(1)(A), it is not required to give the notice required by section 508(a). Alternatively, petitioner contends it is exempt from the provisions of section 508(a) as an organization described in section 508(c)(1)(B). For the reasons described below we find petitioner's claims to be without merit.

It is important to note at the outset that an examination of what constitutes a "church" for purposes of applicable provisions of the tax code does not require consideration of whether an organization's beliefs and practices represent a "religion" within the purview of the First Amendment to the Constitution. See *Chapman v. Commissioner*, 48 T.C.

---

after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—

    (l) unless it has given notice to the Secretary, in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or

    (2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

        *        *        *        *        *        *        *

(c) EXCEPTIONS.—

    (l) MANDATORY EXCEPTIONS.—Subsections (a) and (b) shall not apply to—

        (A) churches, their integrated auxiliaries, and conventions or associations of churches, or

        (B) any organization which is not a private foundation (as defined in section 509(a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

358, 361 (1967). We are not required in this case to reach the difficult question of whether the organization's purposes are religious or nonreligious.[10]

Although fundamental to determining whether an organization is a church, religious purposes alone do not serve to establish it as a church. Equally important are the means by which its religious purposes are accomplished. *Chapman v. Commissioner, supra* at 367 (Tannenwald, J., concurring); *American Guidance Foundation, Inc. v. United States*, 490 F. Supp. 304, 306 (D. D.C. 1980) affd. without published opinion (D.C. Cir., July 10, 1981)''. A church is a coherent group of individuals and families that join together to accomplish the religious purposes of mutually held beliefs. In other words, a church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith. As stated by Tannenwald, J., concurring in *Chapman*:

The word "church" implies that an otherwise qualified organization *bring people together as the principal means* of accomplishing its purpose. The objects of such gatherings need not be conversion to a particular faith or segment of a faith nor the propagation of the views of a particular denomination or sect. The permissible purpose may be accomplished individually and privately * * * but it may not be accomplished in physical solitude.* * * [48 T.C. at 367; emphasis in original.]

To qualify as a church, an organization must serve an associational role in accomplishing its religious purposes.

In the present case petitioner fails this threshold test. Petitioner has had only two members since its formation in 1976. While incipient churches may have only "two or three gathered together," a church's membership will grow well beyond those small numbers given the vitality of its

---

[10]The evidence strongly suggests that petitioner's purposes and activities are not religious but political. See *United States v. Seeger*, 380 U.S. 163, 176 (1965); *First Libertarian Church v. Commissioner*, 74 T.C. 396, 405 (1980). Petitioner presented no evidence of the nature or conduct of its purportedly religious services. Cf. *United States v. Dykema*, 666 F.2d 1096 (7th Cir. 1981). Its newsletter consists primarily of a calendar of events and articles the clear focus of which is to report on and promote libertarian activities. Since our decision is based on our finding that the means by which petitioner seeks to accomplish its stated purposes fail to satisfy the threshold test of fulfilling an associational role and that petitioner, therefore, is not a church within the meaning of sec. 508(c)(1)(A) for purposes of exemption from the requirements of sec. 508(a), we need not reach the issue of whether petitioner's promotion of libertarian philosophy is political or religious activity for purposes of sec. 508(c)(1)(A), or for purposes of our discussion of whether petitioner is an organization described in sec. 501(c)(3), which follows.

associational role. Petitioner, by contrast, seems to have intentionally pursued a policy that discouraged membership for reasons, we believe, that served the private purposes of its founder. Although petitioner generally held bimonthly meetings, the record is void of evidence of the nature or conduct of these meetings other than listings in petitioner's newsletter of topics for certain meetings, generally involving discussion of libertarian, economic, or social issues. The record fails to establish that petitioner serves any associational role for purposes of worship. Therefore, we hold that petitioner is not a church within the meaning of section 508(c)(1)(A).

Petitioner argues in the alternative that it is an organization described in section 508(c)(1)(B). However, an organization that normally receives more than $5,000 in gross receipts in a taxable year is not an organization described in section 508(c)(1)(B). For an organization in existence at least 3 years, this limitation applies when the aggregate gross receipts of the organization for the preceding 2 taxable years plus those of the current year exceed $15,000. Sec. 1.508-1(a)(3)(ii)(c), Income Tax Regs. Petitioner's records show gross receipts from contributions for the taxable years 1979 and 1980 totaling $30,784.09, a figure well in excess of the 3-year, $15,000 limitation of respondent's regulations. Petitioner is thus not an organization described in section 508(c)(1)(B).

Since petitioner is not an organization described in section 508(c), it must satisfy the notice requirements of section 508(a) if it is to be treated as an organization described in section 501(c)(3). These notice requirements are fulfilled by submitting the information required by Form 1023. Sec. 1.508-1(a)(2)(ii), Income Tax Regs.

During the course of respondent's investigation of petitioner's exempt status pursuant to section 7605(c), petitioner submitted information to respondent on its structure, purposes, and organization. We find that petitioner submitted the information required by Form 1023 sufficient to satisfy the requirements of section 508(a). Sec. 1.508-1(a)(2)(ii), Income Tax Regs. Since this information was submitted on April 26, 1981, more than 15 months after the end of the month of its formation, petitioner cannot be

treated as an organization described in section 501(c)(3) for any period prior to April 26, 1981. However, we are required to address the issue of petitioner's status as an organization described in section 501(c)(3) for the subsequent period before us in the record—through the end of taxable year 1982.

An organization described in section 501(c)(3) is exempt from Federal income taxation pursuant to section 501(a).[11] Two tests must each be satisfied to meet the requirements of section 501(c)(3)—an operational test and an organizational test. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. See, e.g., *Church in Boston v. Commissioner*, 71 T.C. 102, 106 (1978).

The operational test requires that an organization engage in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3). Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. An organization is not operated for exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Further, no part of the net earnings of an organization may inure to the private benefit of any individual. Sec. 1.501(c)(3)-1(c)(2), Income Tax Regs. The payment of reasonable salaries does not constitute prohibited inurement, but the payment of excessive salaries does result in the inurement of private benefit to the recipient. The question of the reasonableness of compensation provided is one of

[11]Secs. 501(a) and 501(c)(3) provide:

SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\* \* \* \* \* \* \*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \* \*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

fact. *Unitary Mission Church v. Commissioner*, 74 T.C. 507, 514 (1980), affd. by court order 647 F.2d 163 (2d Cir. 1981); *Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 74 T.C. 531, 537-538 (1980), affd. 670 F.2d 104 (9th Cir. 1981).

Prohibited inurement is strongly suggested where an individual or small group is the principal contributor to an organization and the principal recipient of the distributions of the organization, and that individual or small group has exclusive control over the management of the organization's funds. See *Basic Bible Church v. Commissioner*, 74 T.C. 846, 857 (1980); *Church of the Transfiguring Spirit v. Commissioner*, 76 T.C. 1, 7 (1981). For the reasons discussed below, we find that living expenses paid by petitioner on Patrick Heller's behalf constitute unreasonable compensation and impermissible private inurement.

Patrick Heller is one of only two members of petitioner, and has been the sole representative at petitioner's membership meetings at which the organization's directors were elected. He has exclusive control over petitioner's assets and the distribution of its funds, most of which he himself contributed to petitioner. Since it was formed, petitioner paid all rental, utility, and other living expenses on Patrick Heller's behalf for apartments occupied by Heller prior to the purchase of the house in Oak Park. Petitioner liquidated certain of its own assets to finance the downpayment on the Oak Park house purchased in Patrick Heller's name in 1980. Petitioner also paid all mortgage, utility, maintenance, and other costs associated with the Oak Park house. Though petitioner alleges Heller no longer resided at the Oak Park house after May of 1981, it continued to record payment of living expenses for that year equivalent to that of previous years.

Petitioner argues that the living expenses it paid on Patrick Heller's behalf are reasonable, asserting that Heller worked over 3,000 hours for petitioner from 1978 to 1980. Log sheets for the months of December 1979 and June 1980 record that the overwhelming majority of Heller's time was spent on mail sorting, correspondence, and moving. Petitioner provides no other evidence of the nature or scope of Heller's services as petitioner's minister. Further, petitioner

fails to correlate the compensation paid to Heller with the hours worked by Heller. For example, petitioner's recorded minister-housing expenses paid on Patrick Heller's behalf rose 37 percent between 1978 and 1979, yet recorded hours spent by Heller working for petitioner declined 17 percent during the same period. See *Unitary Mission Church v. Commissioner, supra* at 513-514.

We find on this basis that the living expenses paid by petitioner on Patrick Heller's behalf constitute excessive compensation to Heller. As such, the net earnings of the organization inured to the private benefit of Heller.

Moreover, petitioner contributed $1,250 to the Cryonics Institute, a nonexempt organization for which Heller was a director and treasurer, and provided a loan of $5,100 to Anna Bowling. Petitioner has failed to establish that these transactions furthered any exempt purposes. We find that these transactions also constitute prohibited inurement to the private benefit of Heller.

From the facts before, us we conclude that a substantial element of petitioner's assets were used for the private benefit of Patrick Heller. Petitioner therefore is not operated for exempt purposes since it serves a private rather than a public interest—namely, that of its founder, Patrick Heller. See *Bubbling Well Church of Universal Love v. Commissioner, supra; Unitary Mission Church v. Commissioner, supra; Southern Church of Universal Brotherhood Assembled, Inc. v. Commissioner,* 74 T.C. 1223 (1980). For these reasons we hold that petitioner is not an organization described in section 501(c)(3).

To reflect the foregoing,

*Decision will be entered for the respondent.*