FREDERICK D. RANDOLPH, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Randolph v. Commissioner
Docket No. 24687-84
United States Tax Court
T.C. Memo 1987-432; 1987 Tax Ct. Memo LEXIS 429; 54 T.C.M. (CCH) 339; T.C.M. (RIA) 87432; August 27, 1987. Frederick D. Randolph, Jr., pro se. Barbara J. Fazekas, for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in the amount of $ 7,656.79 in petitioner's Federal income tax for 1980 and an addition to tax pursuant to section 6653(a)[1] in the amount of $ 382.84. By motion filed at the call of this case for trial respondent has claimed damages under section 6673. *431 After concessions by the parties, the issues for decision are (1) whether petitioner is entitled to deductions for charitable contributions in the amount of $ 12,231 and, (2) if not, (i) whether all or part of the underpayment of tax is due to negligence or intentional disregard of the rules and regulations and (ii) whether petitioner is liable for damages under section 6673. FINDINGS OF FACT Some of the facts have been stipulated. The facts and exhibits set forth in the stipulation are incorporated in these findings by reference thereto. At the time of the filing of the petition in this case, petitioner was a resident of Newark, New Jersey. During 1980, petitioner earned wages of $ 28,793.52 from Jersey Central Power and Light Company where he was employed as an electrical engineer and worked forty hours per week on a full "flexi-time" schedule, i.e., he worked forty hours between 7:00 a.m. and 6:00 p.m. Petitioner claimed a deduction for cash contributions in the amount of $ 12,241 on Schedule A of his 1980 Federal income tax return. His filing status was married, filing a separate return. Petitioner possesses a bachelor's degree in electrical engineering from Howard *432 University and a Teacher Certificate from the Charles Harrison Mason System of Bible Colleges. In June, 1977 petitioner was appointed for one year to the office of Evangelist by Tabernacle Evangelist Church of Newark, New Jersey, and in August, 1977 he was ordained a gospel minister by the Jesus Christ Proprietor and Lord Prayer Warrior's Temple Church of Newark, New Jersey. On March 5, 1980, petitioner founded the organization known as Home Ministries of Metro-Newark (hereinafter "Home Ministries"). Home Ministries was a successor to Jesus Christ Proprietor and Lord Prayer Warrior's Club, Inc., a New Jersey nonprofit corporation, the Certificate of Incorporation for which was filed September 8, 1977. [2] Home Ministries neither requested nor received from the Internal Revenue Service a letter determining its exempt status. *433 Petitioner was the President and a Trustee of Home Ministries during 1980 but did not receive any salary from Home Ministries for his services. During 1980, petitioner wrote checks payable to Home Ministries in the total amount of $ 10,400 and deposited those checks in account number 112-042959-1 maintained in the name of Home Ministries at First National State Bank of New Jersey, Vailsburg Office, Newark, New Jersey (the "Home Ministries checking account"). The address for the Home Ministries checking account for 1980 was 44 Longfellow Avenue, Newark, New Jersey 07106. Petitioner, his wife, and two other officers of Home Ministries had signatory authority over the Home Ministries checking account. Petitioner's wife was not a member of Home Ministries during 1980. Petitioner and his wife jointly owned the residence located at 44 Longfellow Avenue, Newark, New Jersey (the "Longfellow Avenue residence"). The Longfellow Avenue residence was also used as the principal place of business of Home Ministries during 1980. During 1980 petitioner and his family lived at the Longfellow Avenue residence. During 1980, J. I. Kislak Mortgage Service Corporation held a mortgage secured *434 by the Longfellow Avenue residence. During 1980, petitioner and his wife also owned rental property located at 17 Longworth Street, Newark, New Jersey ("the Longworth Street Property"), on which Foreman Mortgage Company held a mortgage. Petitioner claimed itemized deductions on his 1980 Federal income tax return for all of the mortgage interest and real estate taxes paid during 1980 with respect to the Longfellow Avenue residence. He also claimed deductions for rental expenses for all of the real estate taxes and mortgage interest paid during the year with respect to the Longworth Street property. During 1980, petitioner wrote checks payable to Church of God in Unity in the amount of $ 245, to Evangelistic Church of God in Christ in the amount of $ 10, to Faith Temple in the amount of $ 40, to Ever Increasing Faith T.V. in the amount of $ 10, to Kenneth Hagin Ministries in the amount of $ 25, and to I.B.T. in the amount of $ 15, for a total of $ 345. The following is a partial analysis of the Home Ministries checking account activity during 1980: 1. Deposits in the total amount of $ 14,725 were made and checks (or other charges) in the sum of $ 12,307 were debited to the *435 account. 2. Of the total deposits, $ 10,400 originated from petitioner. 3. The total sum of $ 3,644.68 was paid to J. I. Kislak Mortgage Service Corporation with respect to the mortgage on the Longfellow Avenue property. 4. The sum of $ 206 was paid to Foreman Mortgage Company with respect to the mortgage on the Longworth Street property. 5. The sum of $ 37.80 was paid to Sterling Exterminating Company for exterminating services with respect to the Longfellow Avenue property. 6. The sum of $ 480 was paid directly to the petitioner. 7. The sum of $ 503.75 was paid to Allstate Insurance Company for automobile insurance covering petitioner's personal automobile. 8. The sum of $ 116.41 was paid to New Jersey Bell for Petitioner's personal telephone expenses. 9. The sum of $ 579 was paid to Public Service Electric and Gas Company, where petitioner maintained a credit union loan and subscribed for electric and gas service to the Longfellow Avenue property. At least $ 6,375 was expended from the Home Ministries checking account on behalf of petitioner. [3] There is no evidence establishing any charitable purpose for the remaining $ 5,932 that was expended from the *436 Home Ministries checking account during 1980. OPINION Petitioner has the burden of proof. Rule 142(a); Welch v. Helvering,290 U.S. 111 (1933). In the context of this case, petitioner must prove that Home Ministries was operated exclusively for religious or charitable purposes and that no part of the net earnings of the organization inured to the benefit of any private individual. Sec. 170(c)(2)(B) and (C). [4] Thus, petitioner's entitlement to a charitable contribution deduction for the amounts that he deposited in the Home Ministries checking account rests on his proof of satisfaction of such requirements. The issues involved in this case have been decided under similar facts. Page v. Commissioner,    F.2d     (8th Cir. 1987), affg. a Memorandum Opinion of this Court; Davis v. Commissioner,81 T.C. 806 (1983), affd. without published opinion 767 F.2d 931 (9th Cir. 1985); Stephenson v. Commissioner,79 T.C. 995 (1982), affd. 748 F.2d 331 (6th Cir. 1984); McGahen v. Commissioner,76 T.C. 468 (1981) *437 affd. without published opinion 720 F.2d 664 (3d Cir. 1983). *438 Respondent asserts that petitioner is not entitled to deduct any of the amounts he deposited in the Home Ministries checking account because Home Ministries operated for the benefit of petitioner personally. We agree with respondent. Petitioner has failed to prove that any of the amounts he deposited in the Home Ministries checking account entitle him to a deduction under section 170(c). "Prohibited inurement is strongly suggested where an individual or small group has exclusive control over the management of the organization's funds." Church of Eternal Life v. Commissioner,86 T.C. 916, 927 (1986). Petitioner, his wife, and two other officers of the church had control over the Home Ministries checking account. Of the $ 12,307 expended from Home Ministries checking account, petitioner admits that $ 6,375, over 50 percent of Home Ministries' expenditures, was paid for his personal benefit or to him personally. Thus, it is clear that Home Ministries existed to a great extent to serve the private benefit of petitioner. A great deal of the testimony of petitioner and *439 the witnesses called by petitioner related to the efforts of petitioner to help and assist the few parishioners of Home Ministries. While petitioner should be lauded for his efforts to help and assist others in the name of Home Ministries, the financial aspects of the "church" do not bear up under close scrutiny. It is obvious that petitioner's scheme was an attempt to convert part of his salary into a tax-free living allowance by depositing money in the Home Ministries checking account and expending a significant part of those deposits for his own personal benefit as a non-taxable "parsonage allowance." Petitioner did not relinquish dominion and control over the alleged charitable contributions and he received a substantial quid pro quo for the alleged contributions; such a financial arrangement does not give rise to a charitable contribution deduction. Svedahl v. Commissioner, 89 T.C.     (Aug. 10, 1987); Wedvik v. Commissioner,87 T.C. 1458, 1467 (1986). Petitioner has failed to prove that no part of the net earnings of Home Ministries inured to the benefit of any private individual as required by section 170(c)(2)(C). To the contrary, the record *440 clearly establishes that the net earnings of Home Ministries were used primarily for his benefit. Even if the 58 benefit inuring to petitioner were small, it would be impermissible. Unitary Mission Church of Long Island v. Commissioner,74 T.C. 507, 513 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981). Furthermore, the record does not establish that any amounts were paid out of the Home Ministries checking account in furtherance of religious or charitable purposes. Therefore, petitioner has failed to prove that Home Ministries was operated exclusively for religious or charitable purposes as required by section 170(c)(2)(B). Our finding that the net earnings of Home Ministries inured to petitioner's personal benefit precludes a finding that petitioner made gifts to Home Ministries when he made deposits to the Home Ministries checking account. [5] As we stated in Davis,"the term 'charitable contribution' as it is used generally in section 170 is largely synonymous with the term 'gift' * * *. A gift is generally defined as a voluntary *441 transfer of property to another without consideration." Davis v. Commissioner,81 T.C. at 817. The transfer cannot be made in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming. Stubbs v. United States,428 F.2d 885 (9th Cir. 1970), cert. denied 400 U.S. 1009 (1971). Petitioner argues that section 107 precludes a finding of private inurement in this case. [6] Petitioner's argument in tis regard is misplaced. Section 107 only excludes "parsonage allowances" from income; it does not operate to override the non-private inurement requirement of section 170(c). Respondent did not determine the deficiency in this case on the basis of petitioner's failure to include in his income the disbursements to or on behalf of petitioner from the Home Ministries checking account. Therefore, section 107 is not in issue. See Svedahl v. Commissioner,supra. Even if we assume, arguendo, *442 that section 107 would operate to exclude such amounts from petitioner's income, petitioner must still prove that there was no prohibited private inurement. Since we have found that private inurement exists, petitioner is not entitled to his claimed charitable deduction for the amounts deposited in the Home Ministries checking account. We have considered petitioner's remaining arguments relating to Home Ministries and find that they are also without merit. With respect to the charitable deductions claimed by petitioner for checks written to payees other than Home Ministries, petitioner argues that contribution deductions should be allowed for those sums because the payee organizations are listed in Internal Revenue Service Publication 78. However, petitioner offered *443 no proof that the organizations shown as payees on the checks (which were stipulated as a part of the evidence in this case) were in fact the organization listed in that publication. In his brief petitioner attempts to identify organizations listed in Publication 78 and correlate them with the payees shown on his checks; however, his arguments on brief cannot be considered evidence. Rule 143(b). We do find that one such payee, the Institute of Bible Technology (I.B.T.) of Newark, New Jersey, is listed in Publication 78, revised as of January, 1981. Therefore, we take judicial notice of Publication 78 and find that petitioner has shown that he is entitled to a charitable deduction in the total amount of $ 15 for the contribution to I.B.T. Respondent has not contended that any private inurement exists with respect to the amounts given to I.B.T. and we therefore will assume that none exists. Petitioner also asserts that payroll deductions were taken from his paychecks for direct contributions to the United Way of Morris County, New Jersey. We would likely have allowed such a charitable contribution deduction had petitioner shown us any corroborating evidence of the contributions, *444 e.g., a stub from his paycheck. However, all petitioner has done is asserted that he had payroll deductions taken. He has not even stated an amount for his claimed withholdings for the United Way. As such, he has failed to prove that he is entitled to a charitable deduction for any amounts contributed to the United Way. We also find that petitioner is liable for the addition to tax under section 6653(a)[7] due to his negligence and intentional disregard of rules and regulations. We have repeatedly sustained the negligence addition in cases involving the use of a church to obtain a deduction for personal expenses. Petitioner bears the burden of proof on the issue of the addition to tax as well. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Petitioner has failed to show that he is not liable for the addition. Petitioner appeared to be a reasonably intelligent and well-educated individual and should have known that he was not entitled to deductions for his personal living expenses even though they were paid through Home Ministries. Davis v. Commissioner,supra at 820-821. *445 Last, we hold that petitioner is not liable for damages under section 6673. [8] Many items were conceded by respondent when this case was called for trial. Additionally, petitioner likely could have sustained his deductions for all of the contributions to the organizations other than Home Ministries if he had properly introduced evidence identifying the organizations. Petitioner was not a lawyer and as such was not familiar with evidentiary requirements and the method of satisfying his burden of proof. Therefore, it appears to us that these proceedings were not instituted primarily for delay. Based upon this particular record we decline to award damages under section 6673 against petitioner in this case. *446 To reflect the concessions of the parties, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Respondent appears to concede that Home Ministries is a successor to this corporation since his brief states that petitioner's organizational documents appear to comport with the requirements of section 1.501(c)(3)-1(b)(4), Income Tax Regs.↩ The Certificate of Incorporation of Jesus Christ Proprietor and Lord Prayer Warrior's Club, Inc. is the only document in evidence which contains language that might be sufficient to satisfy the requirements of that section of the regulations. 3. Petitioner admits in his brief to having received at least $ 6,375 from the Home Ministries checking account. ↩
4. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of deductions. (1) General rule. There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. * * * (c) Charitable contribution defined. For the purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of -- * * * (2) A corporation, trust, or community chest, funds, or foundation -- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if not part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; [and] (c) no part of the net earnings of which inures to the benefit of any private shareholder or individual[.] * * * ↩
5. This finding also precludes a finding that Home Ministries is a qualified organization within the meaning of sec. 170(c)(2)↩. 6. SEC. 107. RENTAL VALUE OF PARSONAGES. In the case of a minister of the gospel, gross income does not include -- (1) the rental value of home furnished to him as part of his compensation; or (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home. ↩
7. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or intentional disregard of rules and regulations with respect to income, gift, or windfall profit taxes. If any part of any underpayment (as defined in subsection (c)(1) of any tax imposed by subtitle A, by chapter 12 of subtitle B (relating to income taxes and gift taxes), or by chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment. ↩
8. SEC. 6673. DAMAGES ASSESSABLE FOR INSTITUTING PROCEEDINGS BEFORE THE TAX COURT PRIMARILY FOR DELAY, ETC. Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $ 5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as part of the tax. ↩