FIRST CHURCH OF IN THEO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
First Church of In Theo v. Commissioner
Docket No. 21170-83X.
United States Tax Court
T.C. Memo 1989-16; 1989 Tax Ct. Memo LEXIS 16; 56 T.C.M. (CCH) 1045; T.C.M. (RIA) 89016; January 10, 1989. John O. Thompson and Katherine K. Thompson (directors), for the petitioner. Susan J. Rascoe and Helen T. Repsis, for the respondent. *19 COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: This is an action for declaratory judgment pursuant to section 7428(a)(1)(B). [1] The facts of this case have been fully stipulated pursuant to Rule 122, and are so found. The relevant facts are summarized below. The issue presented in this case is whether petitioner, First Church of In Theo (hereinafter "In Theo"), an exempt religious organization described in section 501(c)(3), is a private foundation under section 509(a). Petitioner argues that it is a church within the meaning of section 170(b)(1)(A)(i). We find that petitioner is not a church, and that petitioner is a private foundation. FINDINGS OF FACT In Theo was incorporated on March 19, 1976 as a nonprofit corporation under the laws of the State of Texas, with its principal office located at the time it filed its petition at Austin, Texas. The Articles of Incorporation provided for a Board of Directors, which constitutes the governing *20 body (and the only members) of petitioner: John and Katherine Kelly Thompson, and Mildred Kelly Love. Petitioner submitted an Application for Recognition of Exemption under section 501(c)(3) (Form 1023) on or about October 13, 1978. In its application, petitioner claimed that it was not a private foundation within the meaning of section 509(a) because it was a "religious organization for publishing books" or "church" as defined in section 170(b)(1)(A)(i). According to its Form 1023 and other related documents, petitioner's source of financial support was to be from "income from donations of members" and "income from books published." Petitioner's articles of incorporation set forth its purpose as being: organized exclusively for religious purposes, including for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) * * *. More specifically, it is for the purpose of learning Bible truths, discussing and attempting to practice the principles of life. Then publishing experiences both great and small, successful and unsuccessful. In the beginning the foundation will use available publishers, but eventually a publishing *21 plant will be established to publish only books related to the Christian Religion. Petitioner seeks to propagate the belief that "all persons have God within to some extent." In its application for recognition of exemption (Form 1023), petitioner described itself as a "church; a religious organization for publishing books." Petitioner described the "character and nature" of its religion as follows: The character and nature of our religion is that "In" means "in" and "Theo" means "God." We believe that God dwells in all people. Some have more of this Spirit than others * * * we feel that the broader we practice ecumenical love for all, the greater this Spirit. Of course this love needs to be based on true understanding of the Bible. Petitioner's principal activities include the writing of books and booklets, the publication and distribution of religious literature, organizing training materials, and working in the Austin Christian community. It disseminates its beliefs and practices by mailing "releases" to a group of 71 preachers, Christian workers, and interested individuals, who mail their own writings to In Theo, often with comments and suggestions. Petitioner believes *22 that the development of the Spirit is the result of "attempting to practice simple every day love by helping one another not only physically but Spiritually" and it encourages its members to "not only practice this way, but write about it as well." Petitioner is not a membership organization and does not require its members "to participate." Indeed, petitioner does not "ever plan to have any members" so that individuals who work with the organization "may feel free to come and go." In Theo's office is in the Thompsons' home, and petitioner considers the two offices where it publishes its releases to be its "church in the main." Mrs. Thompson is petitioner's only ordained minister, although In Theo believes that all mature Christians are ministers and do not have to be ordained by man. In Theo holds regular religious services which people attend every day during the early spring and summer. Petitioner has no Sunday school for the religious instruction of the young, but Mrs. Thompson works with children upon their parents' request. She feels that God wants her to work with adults rather than children, and so the program is directed toward adults. During the years 1976 through *23 1980, petitioner received $ 141,038.97 in contributions, interest, and unrelated business income. The Thompsons contributed $ 118,365.99 [2] of this amount, and $ 50 was derived from other contributions. Interest in the amount of $ 22,517.98 and book sales in the amount of $ 105 accounted for the remainder of petitioner's support. Petitioner incurred expenses of $ 9,710.85 during the years 1976 through 1978. [3]
On December 5, 1978, the Internal Revenue Service ("IRS") *24 sent a letter to petitioner stating that its purposes were "considerably broader" than those of a section 501(c)(3) organization and that its dissolution provision in its articles of incorporation aaticles of incorporation failed to meet the requirements of section 1.501(c)(3)-1(b)(4), Income Tax Regs. In addition, by letters of January 23 and April 5, 1979, the IRS requested additional information regarding petitioner's qualification as a section 501(c)(3) organization. Consequently, petitioner amended its articles of incorporation on February 15, 1979 to narrow its "purposes" and meet the dissolution requirements of the section 501(c)(3) regulations, and sent written answers to respondent's questions on April 10, 1979. On May 4, 1979, the IRS issued a letter to In Theo advising that it was exempt from tax as a section 501(c)(3) organization, effective as of October 13, 1978. The IRS, however, declined to make a final determination as to petitioner's status as a foundation under section 509(a), but indicated that petitioner would be treated as a publicly supported organization within the meaning of sections 170(b)(1)(A)(vi) and 509(a) and not *25 as a private foundation during the advance ruling period ending December 31, 1980. Petitioner, on September 26, 1980, sought to change the effective date of its exempt status retroactively to March 19, 1976. In response, the IRS requested additional information from In Theo on November 5, 1980 to enable it to make a determination with respect to petitioner's status as a publicly supported organization described in sections 509(a)(2) and 170(b)(1)(A)(vi). In a November 12, 1980 letter to petitioner the IRS reiterated that it would not make a final determination as to petitioner's status as a private foundation, but that petitioner could reasonably be expected to be treated as a publicly supported organization during the advance ruling period. Subsequently, the IRS, by November 3, 1981 letter, advised petitioner that, since it did not submit the information necessary for the IRS to make a final determination of petitioner's private foundation status, it would be presumed to be a private foundation under section 509(a) unless petitioner could establish to the contrary. At this time, however, the IRS did not revoke petitioner's exempt status under section 501(c)(3). Petitioner *26 answered IRS' requests for information in two separate letters. Respondent issued a proposed adverse determination letter dated March 10, 1982 in which it determined that, because In Theo failed to meet the one-third public support, one-third gross investment, and 2-percent unrelated income tests of section 170(b)(1)(A)(vi), petitioner was a private foundation effective April 1, 1981. Notwithstanding its classification as a private foundation, petitioner's exempt status under section 501(c)(3) remained in effect. Petitioner challenged IRS' March 10, 1982 determination, asserting that it was not a private foundation because it was a church within the meaning of section 170(b)(1)(A)(i). In support of its assertion, petitioner answered a list of questions from respondent regarding its status as a church. Based on petitioner's responses to its questions, and citing American Guidance Foundation, Inc. v. United States,490 F.Supp. 304 (D.D.C. 1980), affd. in an unpublished opinion (D.C. Cir. 1980), the IRS issued a proposed adverse determination letter dated May 27, 1982, in which it ruled that petitioner did "not even meet the minimum requirements of a church." *27 That letter stated: You have no formal code, creed, doctrine, sacerdotal functions which identifies your organization. You do not have a membership not associated with any other church or denomination and you do not hold regular congregations of your members for religious services. You do not have an established place of worship. You do not have an organized ministry for ministering to your congregation and do not have regular Sunday school for the religious instruction of the young. Therefore, you do not qualify as a church within the meaning of sections 170(b)(1)(A)(i) and 509(a)(1) * * *. Petitioner appealed the adverse determination letter, and contended that it did in fact meet the requirements to be considered a "church." Following a conference between petitioner and the IRS (and the exchange of correspondence between the parties), the IRS issued a final determination letter with respect to petitioner's status as a church. In it, the IRS determined that petitioner is not a church because it is neither structured nor operated as a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i). Further, the IRS classified petitioner as a private foundation, effective *28 April 1, 1981, since it receives less than one-third of its support from the public. In Theo timely filed a petition seeking declaratory judgment with respect to the adverse determination letter issued by respondent. Accordingly, the prerequisites for declaratory judgment have been satisfied under section 7428(b). OPINION Status as a Church
Petitioner contests respondent's determination that it is a private foundation within the meaning of section 509(a), arguing that it is a church described in section 170(b)(1)(A)(i). While respondent concedes that petitioner is an exempt religious organization, it denies that petitioner is either a church or a publicly supported organization, and therefore asserts that petitioner is a private foundation. That is the issue for decision. The burden of proof is on petitioner. Hancock Academy of Savannah, Inc. v. Commissioner,69 T.C. 488, 492 (1977); Rule 217(c)(2)(i). Petitioner may avoid private foundation status if it meets *29 the public support test of section 509(a)(2). [4] Approximately 84 percent [5] of petitioner's support came from disqualified persons. Thus, petitioner does not meet the public support test since only $ 50, which is far less than one-third of petitioner's total support, actually came from the public. *30 Petitioner may also avoid private foundation status if it is a church or other organization defined in section 170(b)(1)(A)(i). Petitioner contends that it is a church. As will be discussed below, the status of petitioner as a religious organization under section 501(c)(3) does not determine whether it is a church under section 170(b)(1)(A)(i). Section 170(b)(1)(A)(i) allows charitable contributions to be made to a church or convention or association of churches. However, the Code does not define the term "church." Foundation of Human Understanding v. Commissioner,88 T.C. 1341, 1356 (1987). However, Congress intended that the term "church" have a more limited concept than a "religious organization," American Guidance Foundation v. United States, supra at 306; Chapman v. Commissioner,48 T.C. 358, 361-63 (1967); De La Salle Institute v. United States,195 F.Supp. 891, 898 (N.D. Cal. 1961). *31 The term "church" must be interpreted in light of the common usage and understanding of the word. De La Salle Institute v. United States, supra at 903. Given the plurality of religious beliefs and practices in this country, however, determining the common meaning of the term is by no means a simple task. American Guidance Foundation v. United States, supra at 306; Foundation of Human Understanding v. Commissioner, supra at 1356. Thus, we must approach this question with care and "assiduously avoid expanding our inquiry into the merits of petitioner's beliefs" or risk running afoul of the First Amendment. Foundation of Human Understanding v. Commissioner, supra at 1356 -1357; Unitary Mission Church of Long Island v. Commissioner,74 T.C. 507, 514 (1980), affd. without published opinion 647 F.2d 163 (2d Cir. 1981). Although every church is a religious organization, the converse is not true: every religious organization is not a church. *32 Chapman v. Commissioner, supra at 363. Religious purposes alone are not enough to establish an organization as a church. As important are the means by which its religious purposes are accomplished, Church of Eternal Life and Liberty, Inc. v. Commissioner,86 T.C. 916, 924 (1986); Chapman v. Commissioner, supra at 367 (Tannenwald, J., concurring), since it is those means that separate a church from other forms of religious enterprise. American Guidance Foundation v. United States, supra at 306. "A church's principal means of accomplishing its religious purposes must be to assemble regularly a group of individuals related by common worship and faith." Church of Eternal Life and Liberty, Inc. v. Commissioner, supra at 924. "At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship." American Guidance Foundation v. United States, supra at 306. The IRS has developed 14 criteria which it applies in determining whether an individual *33 religious organization is a church. [6] These criteria were applied to petitioner in this case, and the IRS determined that petitioner did not constitute a church. While we do not adopt such criteria as a test, Foundation of Human Understanding v. Commissioner, supra at 1358, they are helpful in understanding respondent's determination that petitioner is not a church. Thus, the criteria are: (1) a distinct legal existence; (2) a recognized creed and form of worship; (3) a definite and distinct ecclesiastical government; (4) a formal code of doctrine and discipline; (5) a distinct religious history; (6) a membership not associated with any other church or denomination; (7) an organization of ordained ministers; (8) ordained ministers selected after completing prescribed studies; (9) a literature of its own; (10) established places of worship; (11) regular congregations; (12) regular religious services; (13) Sunday schools for religious instruction of the young; and (14) schools for the preparation of its ministers. *34 Based on the record, we find that petitioner is not a church within the meaning of section 170(b)(1)(A)(i). Petitioner's religious purposes were accomplished through the writing, publishing, and distribution of religious literature rather than through the regular assembly of a group of believers to worship together. In addition, petitioner is a self-described non-membership organization that does not "ever plan to have members." This surely flies in the face of what we understand to be a "church." As Judge Tannenwald stated in Chapman v. Commissioner, supra at 367 (Tannenwald, J., concurring), the term "'church' implies that an otherwise qualified organization bring people together as the principal means of accomplishing its purpose." (Emphasis in original.) We also noted in Church of Eternal Life and Liberty, Inc. v. Commissioner, supra at 924, that an organization must serve an associational role in fulfilling its religious purposes to qualify as a church. Petitioner's attempts at answering IRS' questions regarding its code, creed, doctrine, ministers, etc., were alternatively vague and confusing or wholly self-serving. Despite conflicting *35 evidence offered by petitioner, the IRS determined, and we find, that petitioner: has no formal code, creed, doctrine, or sacerdotal functions which identify the organization; does not have a membership not associated with any other church or denomination and does not hold regular congregations of its members for religious services; does not have an established place of worship; and does not have an organized ministry for ministering to its congregation and does not have regular Sunday school for the religious instruction of the young. There is no evidence that petitioner encompassed any of these factors based on its early submissions to the IRS. It was only after the second proposed adverse ruling detailing the IRS' criteria for qualification as a church that petitioner began to assert that it did in fact train and ordain ministers, hold regular religious services for a regular congregation, have its own distinct membership, have an established place of worship, and have a school for the religious instruction of children. While the sincerity of petitioner's religious purposes is unquestioned here, petitioner nevertheless fails to establish a "recognizable creed or formal discipline. *36 " In addition, petitioner fails to satisfy the threshold criteria of communal activity necessary for a church. See American Guidance Foundation v. United States, supra at 307. "Exemption from taxation as a church is not a right, but a matter of legislative grace." Christian Echoes National Ministry, Inc. v. United States,470 F.2d 849, 854 (10th Cir. 1972). An organization cannot merely declare that it is a church; it must demonstrate that it is. Church of the Visible Intelligence that Governs the Universe v. United States,4 Cl. Ct. 55 (1983). Thus, "it is not enough that a corporation believes and declares itself to be a church. Nor is it sufficient that the applicant prepares superficially responsive documentation for each of the established IRS criteria." American Guidance Foundation v. United States, supra at 307. "Private religious beliefs, practiced in the solitude of a family living room, cannot transform a man's home into a church." American Guidance Foundation v. United States, supra at 307. *37 Petitioner has failed to demonstrate the requisite associational activities necessary to support a finding that it is a church. Therefore, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and as in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Thompsons actual contributions were as follows: ↩
1976
1977
1978
1979
1980
$ 8,242.64
$ 38,484.67
$ 26,336.64
$ 25,072.04
$ 20,280
3. The record contained a paucity of evidence regarding petitioner's expenses during the years at issue. No expenses were reported for the years 1977, 1979 and 1980, and petitioner recounted (but did not substantiate) expenses in the following amounts for 1976 and 1978: ↩
1976
Supplies
$ 542.06
Miscellaneous help
698.66
Theft loss (reported to police)
600.52
Naylor Publishing Co.
6401.40
TOTAL:
$ 8242.64
1978
Supplies
$ 1322.04
Salary
146.17
TOTAL:
$ 1468.21
4. Under this test, an organization is considered publicly supported if (1) it normally receives more than one-third of its support in each tax year from any combination of (a) gifts, grants, contributions and membership fees, and (b) gross receipts from admission fees, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business within the meaning of sec. 513; and (2) it normally receives not more than one-third of its support in each tax year from the sum of (a) gross investment income, and (b) the excess (if any) of the amount of unrelated business taxable income over the amount of tax imposed by sec. 511 (on unrelated business income). Sec. 509(a)(2). All receipts from disqualified persons (as defined in sec. 4946) are excluded in determining whether an organization has received more than one third of its support from contributions and gross receipts. Disqualified persons generally include substantial contributors, foundation managers, and persons or entities related to them. Sec. 4946(a)(1). Under sec. 507(d)(2)↩, a substantial contributor is any person who has contributed more than $ 5,000 to the organization, if this amount is more than two percent of all contributions and bequests received by the organization before the close of the taxable year in which such contribution is received. 5. Petitioner received $ 118,365.99 from the Thompsons, who are disqualified persons with respect to petitioner. This is approximately 84 percent of $ 141,038.97, petitioner's total support during 1976 through 1980. The remainder of petitioner's support was derived from interest ($ 22,517.98), unrelated business income ($ 105 from the sale of books), and other contributions ($ 50).↩
6. These criteria were first announced in a speech by a former Commissioner. See Remarks of Jerome Kurtz, IRS Commissioner, PLI Seventh Biennial Conference on Tax Planning (Jan. 9, 1978), reprinted in Fed. Taxes (P-H) par. 54,820 (1978).↩